JOSEPH A. SYMNS v. ALBERT R. GRAVES, *as County Treasurer, etc., et al.*

No. 12,663.   ( 70 Pac. 591.)

SYLLABUS BY THE COURT.

1. TAXATION —*Board of Equalization —Record of County Clerk Construed.* When descriptive words used in a record compiled by a clerk, who is not required to employ any particular form of expression, are susceptible of application to two bodies composed of the same individuals, but with separate functions, they will be given such meaning as will sustain the proceeding in which they occur, rather than a meaning which would nullify such proceeding. Hence, the words "the board" and "the board of commissioners" will be held to apply to the county board of equalization when used in a record of proceedings involving the

equalization of the valuation of real estate for purposes of taxation.

2. ———— *Methods and Powers of Board of Equalization.* In equalizing the valuation of tracts of real estate, the county board of equalization is not required to examine witnesses, or to resort to any particular class of evidence. It is its own judge of what it will rely on in making its orders, and its conduct will not be controlled by the courts unless it acts corruptly, or in a manner so oppressive, arbitrary or capricious as to amount to fraud.

Error from Doniphan district court; W. I. STUART, judge. Opinion filed November 8, 1902. Affirmed.

### STATEMENT.

ON September 2, 1899, the plaintiff in error, Joseph A. Symns, commenced an action in the district court of Doniphan county against Albert R. Graves, as county treasurer, and the board of county commissioners of Doniphan county to restrain the collection of certain taxes for the years 1898 and 1899 on real estate belonging to him. On the trial of the action the court made findings of fact and conclusions of law, such portions of which as are material to the decision of the questions involved being as follows :

"The township assessor of said Wayne township, in March, 1898, and as of March 1 in said year, assessed the real property of plaintiff for taxation for the years 1898 and 1899, of the description and at the assessed valuation as follows, to wit : 'The northwest quarter of section 26, township 4, range 20, reduced from a former assessment of $4000 and assessed at the value of $2400 ; the northeast quarter of section 26, township 4, range 20, reduced from a former valuation of $2500 and assessed at the valuation of $1840.' Such assessment was by such assessor duly returned to the county clerk of said Doniphan county. . . .

"Fourth. That the taxable property in said Doniphan county for the years 1898 and 1899 was not assessed at its full actual value in cash, but at much less than its actual value, and the different kinds of property,

after the attempted change by equalization by the board of equalization, as stated in finding eighth hereof, were assessed for said years at the following proportionate parts of the actual cash value thereof, to wit : 'Personal property other than money, notes, bonds, mortgages, and securities, at one-third of such value. . . . Money, notes, bonds, mortgages, and securities, at one-half the actual value thereof. . . . Railroads, at the full actual value thereof. . . . Real estate, at one-fourth of the actual value thereof.'

. . .

"Fifth. . . . That considering all said different classes of taxable property in said Doniphan county at the actual cash value thereof and the assessed value thereof and averaging the same, all the said property was assessed for the year 1898 at an average assessed value of thirty-one per cent. of actual value.

"Sixth. . . . That considering all said different classes of taxable property in said Doniphan county at the actual cash value thereof and the assessed value thereof and averaging the same, all the said property was assessed for the year 1899 at an average assessed of thirty-one per cent. of actual value.

"Seventh. That on March 1, 1898, said real property of plaintiff with improvements thereon was of actual value in cash, as follows : Said northwest quarter of section 26, $11,000 ; said northeast quarter of section 26, $8500.

"Eighth. After the return of the assessment rolls of said township assessor to the county clerk, and on the first Monday in June, 1898, the said board of county commissioners met as a board of equalization and caused a record of their proceedings to be kept, and the same was entered in the record on journal of the proceedings of said board as follows, to wit : 'Troy, Doniphan county, Kansas, June 6, 1898.—The board of commissioners of Doniphan county met as a board of equalization and to transact other business. Present : Hon. Chas. E. Miller, A. L. Perry, Hon. W. F. Kiehnhoff, commissioners ; W. H. Forncrook, county clerk ; J. J. Baker, county attorney, and R. H. Larzelere, sheriff.'

"And thereon said board made eight orders, neither of which related to the equalization of property, and which could only be made by the board as county commissioners, and adjourned, the following being the order of adjournment:

"'The board then adjourned to meet June 7, 1898.'

"'Troy, Doniphan county, Kansas, June 7, 1898.— The board met pursuant to adjournment; all members present.'

"And on such day one order was made by the said board which was not of a nature that could be made by the board of equalization and did not relate to the equalization of property.

"'The board then adjourned to meet June 13, 1898.'

"'Troy, Doniphan county, Kansas, June 13, 1898.— The board met pursuant to adjournment; all members present.'

"And on such day there were nine orders made by said board, neither of which could be made by it as a board of equalization and neither of which related to the equalization of property, and then adjourned, by order, of which the following is a copy:

"'The board of commissioners then adjourned to meet June 14, 1898.'

"'Troy, Doniphan county, Kansas, June 14, 1898.— The board met pursuant to adjournment; all members present.'

"And thereon and on said day there were fifty orders made by the board which related to equalization of property and which could only be made by the board of equalization.  Among the orders so made were the following:

"'The assessed valuation of the following described real estate was corrected:  . . .  N. E. ¼ section 26, town. 4, range 20, from $1840 to $2500; N. W. ¼ section 26, town. 4, range 20, from $2400 to $4000.

.   .   .   .   .   .   .   .   .   .   .   .

"'The board then adjourned.

W. H. FORNCROOK, *County Clerk.*
MARGARET SCHLETZBAUM, *Deputy.*'

"Ninth. Notice of the meeting of said board of county commissioners as a board of equalization was duly published, but the plaintiff had no notice or knowledge of the purpose or intention of said board to raise or equalize the valuation of plaintiff's said real estate, and plaintiff was not present at such meeting. One of the members of said board had never seen and had no personal knowledge of such real estate and the improvements thereon or the value thereof, but had heard that the improvements on said northwest quarter were of the value of eight thousand dollars, and that said northwest quarter was of the actual value of from fourteen to fifteen thousand dollars, and had heard that the improvements on said northeast quarter was of the value of twenty-five hundred to three thousand dollars, and said north-east quarter with such improvements was of the actual value of ten thousand dollars. Two members of said board had passed by and seen such two quarters, northwest and northeast, and believed that the improvements of said northwest quarter were of the value of from eight to ten thousand dollars, and that said quarter-section was of the actual value of from fifteen to sixteen thousand dollars; and that the improvements upon said northeast quarter were of the value of from twenty-five hundred to three thousand dollars, and that said quarter was of the actual value of from nine to ten thousand dollars; and one of these last two members of said board was familiar and knew the value of said real estate and of real estate generally in said Wayne township; and said board, in making the order raising the value on said two quarters intended to raise the same to about the same proportion of what they believed to be the actual cash value thereof as that at which other lands in said county were assessed for said years of 1898 and 1899.

"Tenth. That if said real estate had been assessed in the same proportion to its actual value as in finding seventh that all other property in said county was assessed, said northwest quarter should have been assessed at the value of $3410 and said north-east quarter at the value of $2635."

"Twenty-first. The said board made such raise of valuation as stated in finding eighth hereof without hearing any evidence as to the actual value of said land, but used their own knowledge thereof, as set out in finding nine, together with their knowledge obtained at the time from examination of tax-rolls and former assessments."

"Twenty-fourth. No separate record was kept of the proceedings of the board of county commissioners when transacting business as a board of equalization, but the proceedings of the board of equalization were kept and entered in the same record or journal as and in connection with the proceedings of such board when acting as a board of county commissioners.

"Twenty-fifth. That if said real property of said plaintiff had been assessed at twenty-five per cent. of its actual value, as found in finding seventh, for the years 1898 and 1899, said northwest quarter would have been assessed at $2750, and said northeast quarter would have been assessed at $2125."

"CONCLUSIONS OF LAW.

"First. Said plaintiff is not entitled to have the injunction herein made perpetual.

"Second. The temporary injunction heretofore issued in this case should be dissolved.

"Third. The defendants herein are entitled to recover their costs of this action."

The court rendered judgment in accordance with the conclusions of law, and the case was brought to this court for review.

*Jackson & Jackson,* for plaintiff in error.

*S. M. Brewster,* for defendants in error.

The opinion of the court was delivered by

BURCH, J. : The first question arising from the foregoing facts is whether the board of equalization was in existence June 14, 1898, when the order raising the valuation of the property of plaintiff in error was

made.   He contends that its powers ceased June 6, 1898.

In the law creating county boards of equalization and defining their powers and duties (Gen. Stat. 1901, §§ 7602–7611), the provision relating to adjournment appears in that portion only of section 7603 which concerns personal property, but it relates to proceedings to equalize the valuation of real estate as well.   It was not contemplated that the board should have a period of time in which to equalize personal property, and only the first day of its session in which to adjust the valuation of all the real estate in the county.   Having duly convened upon the appointed day, it could adjourn from time to time, as the progress of its business might necessitate, until the equalization of the real estate of the county was completed. (*Challiss v. Rigg*, 49 Kan. 119, 131, 30 Pac. 190.) Therefore, if properly convened, the board could make the order complained of on the day in question, so far as the limit of time is concerned.

It is urged, however, that the board of equalization had in fact ceased to sit as such.   For the solution of this question it is only necessary to ascertain the meaning to be given to the words "the board" and "the board of commissioners," as used in the parts of the record relating to the adjournment and to the convening of sessions upon the various days from June 6 to June 14.   The words "the board" might refer to the board of equalization with as much propriety as to "the board of county commissioners," and the words the board of commissioners might well be used by the clerk as an abbreviation of the fully expanded description "the board of county commissioners acting as a county board of equalization."   Such an interpretation does not contravene the rule invoked

by plaintiff in error that the board of equalization has only a special and limited jurisdiction, and that its record must exhibit all the facts necessary to give authority for its action.    It simply determines that when descriptive words used in a record compiled by a clerk who is not required to employ any particular form of expression are susceptible of application to two bodies composed of the same individuals, but with separate functions, they will be given such meaning as will sustain the proceeding in which they occur, rather than a meaning which would nullify such proceeding. This is in accord with well-established rules of construction and with previous utterances of this court. (*Fowler v. Russell*, 45 Kan. 425, 427, 25 Pac. 871.) Hence, the record is sufficient to show that the board had retained jurisdiction of the subject of equalization until the time the orders objected to were made.

The second question presented for consideration is the defensibility of the amount of the increase in the valuation of the land in question, and of the method employed by the board of equalization in determining it.    In arriving at the amounts fixed upon, the members of the board used their own knowledge of values in general, their knowledge of the value of the particular tracts in question, from personal observation and from the statements of persons on whom they saw fit to rely, and their knowledge obtained from the assessment rolls themselves, both past and present.    While there is a slight discrepancy between the ninth finding of fact and the evidence, in that only one member of the board had personally seen the land instead of two, the variance is not material, for all the sources of information named in the finding were before the board.  Each individual contributed something, and from the entire fund of knowledge thus placed

at their command an estimate was made.    It was not necessary that the board examine witnesses or resort to any particular class of evidence in order to equalize valuations of real estate.    The statute does not require it; and in the absence of a definitive legislative direction to the contrary, the board must be its own judge of what it will rely on as the foundation of its orders.    This principle has been applied in considering the power of the state board of equalization (*K. P. Rly. Co. v. Comm'rs of Riley Co.*, 20 Kan. 141), and in reviewing the action of the county board of equalization in reference to personal property.    (*Fields v. Russell, Sheriff*, 38 Kan. 720, 17 Pac. 476.)

No sufficient reason is urged for the renunciation of the rule in this case.    Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law.    The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. These are fundamental principles in the law of taxation and cannot be waived aside to meet the exigencies of any particular case.    (*Auditor of State v. A. T. & S. F. Railroad Co.*, 6 Kan. 500, 7 Am. Rep. 575; *K. P. Rly. Co. v. Comm'rs of Ellis Co.*, 19 id. 584.)

But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries.    In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity.

Are the acts of the board of equalization in this case
so arbitrary, then, as to amount to official misconduct
or fraud?    The valuation assigned by the board was
identical with that disclosed by the previous assess-
ment roll, and one member of the board, besides
having seen this particular land, was declared by the
trial court to be qualified to judge of values generally
throughout the township in which it was situated.
The board could scarcely ignore his judgment as to a
depreciation, especially as it coincided with their own
information.    What counsel calls "rumor" and "gos-
sip" the district court evidently esteemed as a rea-
sonable basis of judgment, when used in connection
with all the other evidence considered, and the con-
trolling idea in the mind of each commissioner was
the establishment of uniformity of value.    The pro-
portion of actual value used as the basis of assessment
was lower for real estate than for any other class of
property in the county, and six per cent. below the
average for all property.    In the light of all the facts
found by the trial court, it cannot be judicially de-
clared that the board of equalization abused its power.
. In the case of *State Board of Equalization v. People*,
191 Ill. 528, 61 N. E. 339, relied on by counsel for
plaintiff in error, an application was made for a writ
of mandamus to compel the state board of equaliza-
tion to assess in the manner provided by law the capi-
tal stock and franchises of certain street-railway, gas
and electric-light companies in the city of Chicago.
The grounds on which the court proceeded in award-
ing the writ are fairly indicated in the following quo-
tation from the opinion :

"The amount, however, assessed against said com-
pany by the state board of equalization was $450,000,
or $8,978,403 less than the company's own statement,
subscribed and sworn to by its own secretary, showed

to be the amount for which it should have been assessed. The assessment of this corporation is a fair illustration of the assessments made by the state board of equalization against the other six companies which it assessed.

"It was the duty of the state board of equalization to assess the capital stock, including the franchises, of said corporations at the fair cash value thereof. Instead of doing so, the respondents arbitrarily and wilfully failed to follow a proper and long-established rule in force in this state for making such assessments, by refusing to take into consideration, in making such assessments, the bonded indebtedness of said corporations. They also disregarded all other rules for the making of such assessments in force at the time of the filing of this petition, and, for the purpose of evading their duty, sought to pass new rules for their government in making said valuations and assessments, and refused to consider the information then before them furnished to them by the assessors as provided by statute, and assessed the capital stock and franchises of said corporations at a nominal sum instead of at the fair cash value thereof."

No such state of facts appears in the case at bar. Since the action of the board of equalization cannot be disturbed, it cannot be said that the rule requiring each step of the tax proceeding, including the valuation, to be uniform, has been violated. The findings of fact are fairly sustained by the evidence, the conclusions of law are correct, and the judgment of the district court is affirmed.

All the Justices concurring.