THE CAREY SALT COMPANY, *a Corporation, et al.,* v. THE CITY OF HUTCHINSON *et al.*

No. 14,611.   ( 82 Pac. 721.)

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Public Improvements—Discretion of City Authorities.* A petition to the mayor and council of a city of the second class under section 1068 of the General Statutes of 1901 confers upon that tribunal exclusive power to cause such special improvements to be constructed and to determine the kind and quality thereof. In the exercise of that power they may enact, amend or repeal any ordinance relating to the special improvements under consideration, if the vested rights of third persons be not injuriously affected thereby.

2. MANDAMUS—*Parties—Property-owner.* An owner of real estate abutting upon a street in a city of the second class who is liable for paving assessments has a special interest in the improvements that will enable him to institute a proceeding in mandamus if his interest be involved.

Original proceeding in mandamus. Opinion filed October 7, 1905. Writ denied.

*George A. Vandeveer*, and *F. L. Martin*, for plaintiffs in error; *Fairchild & Lewis*, of counsel.

*Prigg & Williams*, and *H. Whiteside*, for defendants in error.

The opinion of the court was delivered by

GRAVES, J.: On March 20, 1905, a petition was presented to the mayor and council of the city of Hutchinson requesting that a specified portion of Main street in that city be paved with vitrified brick, giving the width of street that the petitioners desired to have paved, the material to be used, the limit of cost, the manner of payment, and other particulars concerning the proposed pavement. This petition was accepted, and an ordinance was immediately enacted providing for the construction of the pavement, the ordinance being designated as ordinance No. 618.

On June 19, 1905, bids for the construction of this pavement had been received by the committee appointed for that purpose, but the committee, being unable to agree, referred the same to the council, which at once rejected all bids received under said ordinance. At the same meeting a petition was presented asking for the construction of a "bitulithic pavement" upon the same portion of Main street. This petition was accepted, and an ordinance designated ordinance No. 629 was immediately passed providing for the construction of the last-mentioned pavement and repealing ordinance No. 618. The usual steps were taken under ordinance No. 629, and a contractor is now at work making the "bitulithic pavement."

The plaintiffs, who own real property abutting upon this pavement, obtained an alternative writ of mandamus from this court, on the 21st day of August, 1905, and they now ask that a peremptory writ issue directing the defendants to cease work on the "bitu-

lithic pavement" and construct one of vitrified brick, in accordance with the petition of March 20, 1905.

The plaintiffs claim that the only power which a mayor and council have to provide for the pavement of a street is given by section 1068 of the General Statutes of 1901, and that this statute when properly construed means that the petitioners may state in their petition the kind of pavement desired, the material to be used, the manner of construction, the width of street to be paved, and the maximum cost thereof, and that the mayor and council will be bound thereby if such petition be accepted and acted upon.

It is therefore contended that after the adoption of ordinance No. 618, and the proceedings had thereunder, the mayor and council were powerless to entertain any other petition or to consider any other kind of pavement, and the attempted repeal of ordinance No. 618 and the enactment of ordinance No. 629, and all subsequent proceedings, were absolutely void. The statute referred to is as follows:

"When the mayor and council shall deem it necessary to grade, pave, curb, gutter, or regrade, repave, recurb, or regutter, any street, alley, or avenues, or any part thereof, within the limits of the city, for which a special tax is to be levied as herein provided, said mayor and council shall by resolution declare such work or improvement necessary to be done, and such resolution shall be published in the official paper of the city for five consecutive days, if the same is a daily, and for two consecutive weeks, if the same is a weekly, and if a majority of the resident owners of real property liable to taxation for such improvement shall not within twenty days thereafter file with the city clerk their protest in writing against such improvement, then the mayor and council shall have the power to cause such improvements to be made and to contract therefor, and to levy the taxes therefor as provided by law, and the work may be done during or after the collection of the special assessments, as may be deemed proper by the mayor and council; also, whenever a majority of the resident owners of real property liable to taxation for the improvement peti-

tion the mayor and council to pave, grade, curb, gutter or otherwise improve any street, alley, or avenue, of any part thereof, the mayor and council shall cause said work to be done, shall contract therefor, and levy the taxes therefor as provided by law; provided, that the cost of paving, grading, curbing, guttering and otherwise improving the areas and squares formed by the crossing of streets, as well as the cost of making any of said improvements in streets, alleys and avenues running along and through city property, shall be paid for by a general tax levied by the mayor and council upon all the property of the city." (Gen. Stat. 1901, § 1068.)

We do not agree with the plaintiffs in the construction of this statute. We think that one, and perhaps the principal, object of this law was to restrain overzealous mayors and councilmen from pushing special improvements into localities where the resident property-owners do not want or need them, and by this provision such owners are given the right to say when such improvements shall be made. We do not think, however, that this statute contemplates that such petitioners may compel the mayor and council to construct any particular kind of improvement or control the details thereof.

The office of the petition is to inform the proper tribunal that the petitioners want the improvement made. This act on their part authorizes the improvement to be made of such kind and quality as may be determined by the mayor and council. Whatever the petition may contain as to the character of such improvement must be taken as mere advisory suggestions, which may or may not be followed. By this we do not mean that the mayor and council may under all circumstances, when a paper called a petition is filed with them, proceed to construct the special improvement asked for and disregard the statements of such paper as to the kind of improvement and the details of its construction. A paper might be so filed which would amount to a mere proposition, instead of a pe-

tition, within the meaning of the statute. The sign-
ers of such a paper might indicate that they wanted
the proposed improvement provided it could be made
for the price and of the kind stated, and not otherwise.
This would not be a petition within the purview of
this statute, and such paper might be properly re-
jected. How far the mayor and council would be
bound by the provisions of such a paper if it were
accepted and acted upon is a question not involved
here, and we express no opinion thereon. The papers
involved herein, called petitions, are properly so desig-
nated, and do not contain the objectionable features
suggested. Where, as in this case, the decision de-
pends upon the first construction of a statute, authori-
ties directly in point are not to be expected, and none
have been cited. We have given the language of the
statute the meaning which to us seems to be the most
reasonable, and the most in harmony with the purpose
of the law relating to this general subject.

The mayor and council are elected directly by the
people. They have the general supervision over the
streets and alleys in the city; they are in a situation
to know the needs, wishes and financial condition of
resident citizens, and courts must assume that in the
discharge of their official duties they will fairly con-
sider and justly regard the rights of all persons af-
fected thereby; and placing this work in their hands
seems so appropriate that, in the absence of a clear
and express indication of such purpose, we cannot as-
sume that the legislature intended to place this im-
portant duty in the control of petitioners who simply
represent themselves, and are under no official or
other obligation to protect the interests which the
public have in such pavement, rather than in the con-
trol of these official representatives of the people.
While the petitioners who in a large measure pay for
these improvements are deeply interested therein, it
is at the same time a matter of great importance to
the general public, who pay for the pavement in the

areas and squares made by the crossing of the streets, and who use the streets for both business and pleasure, that all the streets in the city shall be of good quality, uniform in kind and construction, and such as will meet all the reasonable requirements of public use.

When a petition is presented to the mayor and council that body may deal with it the same as with any other question. Action thereon may be reconsidered, ordinances amended or repealed and new enactments made the same as when dealing with any other subject of municipal legislation. If the authorities of Hutchinson were satisfied that a mistake had been made in adopting the vitrified-brick pavement provided for in ordinance No. 618, the early correction of such mistake would seem to be a very proper proceeding, and any rule of law that would prevent such action should be avoided rather than followed. At the time this correction was made the whole matter was yet in an indeterminate condition and wholly within the control of the mayor and council, no outside or third parties had been affected, and no vested interests could be injuriously affected by such correction, and therefore no good reason existed for not making the same.

It is urged that the petition of March 20, 1905, is still pending notwithstanding the repeal of ordinance No. 618, and that this is the only legal petition authorizing the construction of pavement; that the number of signers on the petition of June 19, 1905, has become so reduced by withdrawal and otherwise that it has ceased to have any legal force. This, however, under the statute as we construe it, is immaterial. The petition of March 20, 1905, if legal, and we think it is, fully authorizes the work now in progress. The petition of June 19, 1905, if legal, of which we express no opinion, also authorizes such work. It is apparent from the numerous petitions presented that the resident property-owners are a unit upon the question that Main street ought to be paved. They are divided as to the best kind of pavement, and we think the proper

tribunal has decided this question for them.  As to when and under what circumstances petitioners can withdraw their names from a petition is a matter of little importance, for if the attempted withdrawal from the petition of June 19, 1905, was proper, then the petition of March 20, 1905, still stands, and justifies the work now being done; if not, then the other petition stands, and authorizes such work; so this question need not be considered.

Another objection to the construction contended for by the plaintiffs is that if it should prevail the statute would be unconstitutional for the reason that it would delegate legislative powers to the petitioners. (*Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416; *Hutchinson v. Leimbach,* 68 Kan. 37, 44, 74 Pac. 598, 63 L. R. A. 630.)

The claim is made by the defendants that the plaintiffs have no right to maintain this action—that it should have been brought in the name of the state; but we think that the special interest that they have in the improvement being made takes them out of the general rule relating to mandamus cases, and they may maintain this action in their own names.  The writ is denied.

All the Justices concurring.