THE BOARD OF EDUCATION OF THE CITY OF EMPORIA et al., *Plaintiffs*, v. R. B. SHEPHERD et al., as the Board of County Commissioners of the County of Lyon et al., *Defendants*.

No. 19,005.

SYLLABUS BY THE COURT.

1. BARNES HIGH-SCHOOL LAW—*Curative Statutes*. The opinion of this court in *The State v. Pauley*, 83 Kan. 456, 112 Pac. 141, and *Armstrong v. George*, 84 Kan. 248, 114 Pac. 209, relative to the effect of the various curative statutes upon the operation and effect of the Barnes high-school law are followed.

2. TAX LEVY—*For High Schools—Certificate of County Superintendent—Conclusive*. The certificate of a county superintendent of the amounts necessary for the maintenance of the high schools established under that act determines the amount to be levied for that purpose.

3. ——— *Same*. The action of the county superintendent in the exercise of this authority can not be overruled unless he abuses his discretion by acting arbitrarily, capriciously or fraudulently, or in other words, acts in bad faith.

4. ——— *Same*. If expenses not properly chargeable for the purposes before referred to have been included in a certificate filed at the time designated in the statute, the county superintendent may lawfully file a new certificate making the necessary corrections.

5. ——— *Same*. In the absence of proof to the contrary it will be presumed that a county superintendent has performed official duties in good faith and upon proper information.

6. —— *Same.* In the situation disclosed by the statement of facts agreed to, it is held that the levy made by the county superintendent on August 16 · for the support of the high schools for the ensuing year is valid, and should be extended on the tax roll.

Original proceeding in mandamus. Opinion filed October 11, 1913. Peremptory writ denied.

*R. M. Hamer,* and *H. E. Ganse,* both of Emporia, for the plaintiffs.

*O. S. Samuel,* of Emporia, for the defendants.

The opinion of the court was delivered by

BENSON, J.: This is an action in mandamus to compel the defendant board to levy a tax for the support of several high schools in Lyon county, under the provisions of chapter 397 of the Laws of 1905 (Gen. Stat. 1909, § 7792 *et al.*), known as the Barnes law, and amendatory acts.

The material facts, set out in a statement agreed to by the parties, are that at the election in November, 1906, a majority of those voting on the proposition voted for the adoption of the Barnes law, but the number of affirmative votes was less than a majority of all the votes cast at the election. The board of canvassers declared the proposition carried, and thereafter, upon estimates submitted by the county superintendent, the board of county commissioners levied taxes for the support of these schools for the year 1907, and has made such levies for each year since. The taxes so levied have been collected · and paid for the maintenance of the several high schools established and maintained under the provisions of the Barnes law. The question of the adoption of that law has not been submitted to the voters since the election of 1906. On the 25th of July, 1913, the Emporia high school filed· a statement with the county superintendent, signed by its clerk, purporting to be an estimate approximating

the expenses of the school for the year 1913-1914, amounting to $20,790, containing the following items:

| | |
|---|---:|
| High-school teachers' salaries | $18,490 |
| Fuel | 600 |
| Janitors' salaries | 1,200 |
| Domestic science course | 250 |
| Agricultural course | 250 |

Similar estimates were submitted for the other high schools joined as plaintiffs in this action, but only one of the other districts claimed the items for domestic science and agricultural courses.

Following these estimates the county superintendent certified to the county board her estimates for the support of these schools. In this certificate she reduced the amount claimed by the Emporia district by deducting $500 included in its estimate for domestic science and agricultural courses and $500 state aid, making a total reduction of $1000. Deductions of items for the same amounts for domestic science and agricultural courses were made from the estimates of the Hartford district. The state aid was estimated by that district at $500, but in the superintendent's certificate $1000 was deducted on that account. The estimates of the county superintendent for the several districts so included in her certificate amounted to $28,762. A levy of five-tenths of a mill, the maximum allowed by law, on the assessed valuation of the taxable property of the county would not produce that sum. The county superintendent therefore asked for the maximum levy. The county board refused to make that levy, but did levy three-tenths of a mill. The Emporia school board then called upon the county superintendent to make the levy of five-tenths of a mill, which she refused, but on August 16, 1913, she did make a levy of forty-five hundredths of a mill, which is sufficient to raise the amount stated in an amended certificate which she filed

with the county clerk on the same day. This new certificate is as follows:

*"To the County Clerk of Lyon County, Kansas:*
"I hereby certify that the following is my estimate of the amount necessary to maintain the College Preparatory Course and a General Course that are required by law to be carried in Barnes High School. This estimate is for the ensuing year, 1913-1914, and shall be apportioned in the different schools as follows:

| | | |
|---|---|---|
| Emporia High School...Dist. No. 1...... | $9,650.00 |
| Americus H. S.........Dist. No. 2....... | 1,550.00 |
| Neosho Rapids H. S....Dist. No. 20...... | 1,542.00 |
| Hartford H. S.........Dist. No. 25 Jt.... | 2,357.00 |
| Reading H. S..........Dist. No. 50 Jt.... | 1,705.00 |
| Admire H. S..........Dist. No. 58...... | 1,595.00 |

| | |
|---|---|
| Total .......................... | $18,399.00 |

"I hereby certify the above apportionment to be correct and according to law to the best of my knowledge and belief.			FANNIE R. VICKREY, *Co. Supt.*"

This certificate, it will be seen, reduced the amount previously certified for the Emporia district from $19,790 to $9650. Slight changes were made in the amounts for the other districts. The first certificate called for the following amounts: Americus, $1565; Neosho Rapids, $1532; Hartford, $2405; Reading, $1800; Admire, $1675.

On the 19th day of August the county superintendent added to this certificate the following:

"On the basis of the above estimate so made, by me, I hereby direct you to extend upon the tax rolls of Lyon county for 1913-1914, the sum of .45 mills, which same will produce said amount for the purposes above indicated.			FANNIE R. VICKREY, *Co. Supt.*"

The petition in this action was filed on August 18, 1913. It will be observed that the county board has made a levy of three-tenths of a mill and the county superintendent has made a levy of forty-five hundredths of a mill for the maintenance of these schools. In the absence of any reference to any extension upon the tax

roll it is presumed that neither levy has been so extended.

The answer of the county board pleads the insufficiency of the vote at the election of 1906 to adopt the law, as provided by section 10 of the act of 1905. (Gen. Stat. 1909, § 7801.) While the vote was insufficient for that purpose as held in *Humboldt v. Klein,* 79 Kan. 209, 99 Pac. 222, subsequent legislation cured the defect so far as these schools are concerned (*The State v. Pauley,* 83 Kan. 456, 112 Pac. 141; *Armstrong v. George,* 84 Kan. 248, 114 Pac. 209).

The board, having made a levy for these schools, must have proceeded upon the belief that the Barnes law was in force in the county, and by making the levy for an amount less than requested apparently understood that the board was vested with discretion to fix the amount.

The law referred to provides:

"In every county in the state of Kansas in which one or more school districts or cities of less than sixteen thousand inhabitants shall have maintained high schools with courses of instruction admitting those who complete the same to the freshman class of the college of liberal arts and sciences of the University of Kansas the county commissioners shall levy a tax each year of not less than one-fourth of a mill nor more than three mills on the dollar of the assessed valuation of the taxable property within such counties for the purpose of creating a general high-school fund.

"It shall be the duty of the principal of each such high school, at the expiration of the school year, to make a report under oath, to the county superintendent, showing the total enrollment and the daily attendance of each pupil, and the average daily attendance in his high school for that year, and to furnish such other reports as the county superintendent may require, and his last month's salary shall not be due until such reports shall have been duly made.

"It shall be the duty of the county superintendent to certify to the county clerk and to the county treasurer, on or before the 25th day of July of each year, the average daily attendance in the several high schools

of the county complying with the provisions of this act for the year ending on the 30th day of June preceding, and to certify to the board of county commissioners the amount necessary for the maintenance of such high schools the ensuing year, and the county commissioners shall make such levy (not to exceed three mills on the dollar of the assessed valuation of the taxable property within such county) as may be necessary to produce such amount; and in case the county commissioners shall fail to make such levy, then the county superintendent shall make a suitable levy, and certify the same to the county clerk of such county, who shall enter upon the tax rolls the levy so made by the county superintendent." (Gen. Stat. 1909, §§ 7792, 7796, 7797.)

By a later act the maximum levy is reduced to five-tenths of a mill. (Laws 1909, ch. 245, § 15, Gen. Stat. 1909, § 9408.)

The agreed statement of facts does not show that any certificates were made by the principals of these schools to the county superintendent as the law provides, but estimates signed by the clerks appear to have been considered by that officer in making her certificate.

The first legal question is whether a certificate of the county superintendent of the amounts to be levied is controlling. The statute declares that the county commissioners shall make such levy (subject to the prescribed limitation) "as may be necessary to produce such amount" (Gen. Stat. 1909, § 7797), that is, the amount certified by the county superintendent. Upon failure to do so, the county superintendent is required to make a suitable levy, i. e., a levy suitable to raise the amount certified. The duty of fixing the amount to be raised is therefore vested in the county superintendent. The reports of the high-school principals are for the information of that officer upon whom the duty of fixing the amount finally rests.

It is suggested in behalf of the plaintiffs that the office of the county superintendent is only a concen-

trating point for information to be furnished by the district officers who know more of the needs of the schools than that officer. It is true that the information is to be gathered in that office, but it is also true that the certificate of the county superintendent is by the legislative mandate made conclusive of the amount to be raised, subject, however, to the restriction resting upon other public officers in whom a like discretion is vested that the official shall exercise an honest judgment and not act arbitrarily, capriciously or fraudulently. In other words, the authority vested in the officer must be exercised in good faith. When so exercised his discretion can not be controlled by mandamus. In *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591, it was said:

"Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law." (p. 636.)

In *Finney County v. Bullard,* 77 Kan. 349, 94 Pac. 129, 16 L. R. A., n. s., 807, the foregoing was quoted with approval, but in both cases it was held that:

" 'Fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity. (p. 636.)' " (p. 354.)

In *Ward v. Piper,* 69 Kan. 773, 77 Pac. 699, it was held:

"The law confides in certain officers the discretion to determine the extent of the levy, and the amount of money necessary, to meet the current expenses of municipalities, and the courts can not supervise or control such discretion." (Syl. ¶ 1.)

The principles declared in the above quotations have

been applied in many other cases in this court. (*De-ver v. Humphrey,* 68 Kan. 759, 75 Pac. 1037; *School District v. Davies,* 69 Kan. 162, 76 Pac. 409; *Allen v. Burrow,* 69 Kan. 812, 77 Pac. 655; *Kerby v. Clay County,* 71 Kan. 683, 81 Pac. 503; *Salt Co. v. Hutchin-son,* 72 Kan. 99, 82 Pac. 721; *Richardson v. Simpson,* 88 Kan. 684, 129 Pac. 1128.)

The next inquiry. is whether the county superintend-ent, after filing the required certificate, could lawfully change it by an amended or new certificate. If the county board had made a levy to raise the amount cer-tified in the first instance, or rather so much of it as could be raised within the statutory limitation of five-tenths of a mill on the dollar, a different question would have been presented. But the levy was not made. The action required by law had not been taken when a new certificate was filed materially reducing the amount to be raised. Nothing had been done in accordance with the first certificate that would have to be undone in order to comply with the requirements of the second certificate. No public interest was jeopardized by the correction of a mistake in the certificate or in the facts upon which it was based. The duty to provide for a just levy ought not to be defeated by an incorrect or mistaken step in the proceedings, so long as the oppor-tunity remained to correct it by the levy and collection of a proper tax for the same year. It is true the statute fixes a time for filing the certificate with the county board, but a failure to perform that duty at the desig-nated time would not relieve the officer from the obli-gation, nor defeat the rights of the public. · Statutory specifications of time within which an official act is to be performed regarding the rights of others are gen-erally considered as directory to the officers and not a limitation of their authority. (*Pond v. Negus & Al.,* 3 Mass. 230; *The People v. Allen,* 6 Wendell, [N. Y.] 486; *Walker et al. v. Chapman, Governor, &c.,* 22 Ala.

116; *Hugg v. Camden,* 39 N. J. Law, 620; *Hart v. Plum,* 14 Cal. 148.)

The same rule may be applied to the correction of a mistake in a certificate already filed.

It is argued by the plaintiffs that the great reduction made in the last estimate for the Emporia school, resulting in a gain to the other schools (because of the limitation of the power to levy to five-tenths of a mill) is an earmark of fraud. There is no charge of fraud or bad faith, however, in the pleadings, and nothing in the facts stated to prove such a charge had it been made.

. The answer of the county superintendent contained the following statement of reasons for the new certificate:

"That this defendant after making and certifying the said estimate called Exhibit 'A' of plaintiffs' petition, ascertained that the clerks of the boards of the Emporia City High School, of Hartford H. S. District No. 25 and of Reading H. S. District No. 50, had included in their estimates of the cost of maintenance of the high schools for the high schools for the several districts which they represented for the ensuing years 1913-1914, a large amount of expenses for the maintenance of studies and courses not required by said Barnes High School Law, and have included large items of expense not properly chargeable under said law, and which items ought not to be included in the estimate so certified to the County Board."

What items of expense should properly be included in the amounts certified involved an investigation and determination of facts. Whether the superintendent had made mistakes in respect to these items was also a question of fact. In the absence of proof to the contrary, the presumption of law is that the officer performed her duties in good faith; that she acted according to her honest judgment upon proper information, in determining the facts and in filing the new certificate. As stated in *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591, a departure from duty must be shown by the party seeking redress.

It is concluded that the last certificate must be taken as true, and that the levy made by the county superintendent, admitted to be sufficient to raise the amount so certified, should be held valid. This levy should be extended upon the tax roll, and the tax should be collected accordingly. It is presumed that this will be done by the proper officers. A peremptory writ is therefore refused.