No. 21,623.

THE MID-WEST PHOTO PLAY CORPORATION, *Appellee*, V. MRS. J. M. MILLER et al., as the Kansas State Board of Review, *Appellants*.

SYLLABUS BY THE COURT.

1. MOVING-PICTURE FILMS—*Decision of Board of Review—Review by the Courts.* Under the act relating to motion-picture films (chapter 308 of the Laws of 1917) the Kansas state board of review is given full power and discretion to determine whether films and reels offered for its examination and decision are moral and proper for exhibition, and its determination is conclusive and not open to review or interference by the courts unless its action is fraudulent, arbitrary, or in excess of its authority.

2. SAME—*Censorship by Board of Review—Redress of Aggrieved Party.* The redress for an aggrieved party provided for in section 15 of the act is not a reëxamination of the picture by the court nor the exercise of an administrative and nonjudicial power, but is such redress as a court may give.

3. SAME—*Petition to Court for Review—No Cause of Action Stated.* In the absence of allegations or proof that the board acted arbitrarily or dishonestly, it must be presumed that it acted in good faith and that its determination was an honest exercise of its best judgment.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. MCCAMISH, judge; FRANK D. HUTCHINGS, associate judge. Opinion filed January 12, 1918. Reversed.

*S. M. Brewster,* attorney-general, *S. N. Hawkes,* and *John L. Hunt,* assistants attorney-general, for the appellants.

*Maurice McNeill,* of Columbus, *Edwin A. Krauthoff, W. S. McClintock,* and *A. L. Quant,* all of Kansas City Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This appeal involves the construction of section 15 of chapter 308 of the Laws of 1917, one of the provisions of the motion picture censorship law. It is as follows:

"The office of the board provided for in this act shall be in Kansas City, Kansas, and any person, company or corporation aggrieved by the action thereof, may have redress in the district court of Wyandotte county in this state, in which service may be had upon the board or any

member thereof by commencing proceedings therein within sixty days from the action of the board complained of by such person, company or corporation; provided, however, that the beginning or pending of any such proceedings shall not abate or suspend the action of the board until the final disposition of such proceedings by the court."

The plaintiff, The Mid-West Photo Play Corporation, filed its petition in the district court of Wyandotte county alleging that it, as the owner of a certain motion picture film entitled "The Easiest Way," had submitted it to the defendants as the Kansas state board of review, and that, although the film was highly moral and proper, and no part of it was cruel, obscene, indecent, or immoral, or such as would tend to debase or corrupt public morals, the board rejected it and refused to allow its exhibition in the state of Kansas, on the ground that it was immoral, according to section 6 of the act. The petition contained no allegation that the members of the board acted arbitrarily or in bad faith. A general demurrer to the petition was filed, and this appeal is taken from the court's order overruling the demurrer.

It is said by plaintiff that as the averments of the petition are to be taken as true upon the demurrer, the allegation that the picture, "The Easiest Way," is highly moral and proper stands admitted, and that the plaintiff, if aggrieved, was entitled to an appeal to the district court. The statute, as will be observed, does not purport to give an appeal from the decision of the board or to authorize the court to reëxamine the picture and give its decision on its merits. The legislature authorized the creation of the board and vested in it the discretion and power of determining the character and fitness of pictures for exhibition in the state, commanding the board to approve those which are moral and proper, and reject those which are cruel, obscene, indecent or immoral, or such as tend to debase or corrupt morals. (§ 6.) Under the old act it was provided that if the state superintendent of public instruction disapproved of a picture the party offering the same might have it examined by a commission consisting of the governor, attorney-general, and secretary of state, and if they, or a majority of them, should find it to be fit for exhibition the superintendent was required to indorse his approval on it. (Gen. Stat. 1915, § 10778.) Under that provision the review-

ing officers were authorized to examine the film on the same basis as the superintendent had done and to exercise their own judgment and, discretion in determining the fitness of the picture for exhibition. If in their judgment it was fit, their decision and approval was substituted for that of the superintendent. However, that provision was expressly repealed, and, instead of an appeal or review by other executive officers, it was provided that if a party felt aggrieved at a disapproval of a picture by the board redress may be had in the district court of the county where the office of the board was located. What is the redress provided? Manifestly, it is such redress as a court can give, and not an exercise of executive or administrative power. A reëxamination of the picture to determine whether it was moral and fit for exhibition would be an exercise of administrative power, and that discretion and power was specially conferred upon the board. It would result in the substitution of the judgment of the court for that of the board in a pure matter of administration, which the legislature could not and evidently did not intend to confer upon the district court. It is fundamental that courts cannot be required or permitted to exercise any power or function except those of a judicial nature. (*Auditor of State v. A. T. & S. F. Railroad Co.*, 6 Kan. 500.) An aggrieved party may call on the court for judicial redress and not for the performance of a nonjudicial or administrative function. If the board abuses its authority and acts arbitrarily or fraudulently, redress from the courts may be had, and this was the redress provided for in the section in question. In *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591, where the court was asked to review the action of the board of equalization in fixing the valuation of property for the purposes of taxation, it was said:

"Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges, who are not elected for that purpose, with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. . . . But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown

by the party seeking redress to fall within the well-defined limits of the powers of a court of equity." (p. 636.)

So, here, the duty and discretion placed in the board of review being administrative in character and nonjudicial, the court is not warranted in substituting its judgment for that of the board. If the board should act fraudulently, or so arbitrarily and capriciously as to amount to fraud, a resort to the courts may be had, and as against such action an aggrieved party may have redress. (*Silven v. Osage County,* 76 Kan. 687, 92 Pac. 604.) In *The State, ex rel., v. Mohler,* 98 Kan. 465, 158 Pac. 408, cited by plaintiff, this doctrine was recognized, and speaking of the acts of administrative boards it was said:

"The exercise of such power is merely the exercise of administrative discretion. If this power is abused, the courts are open to the aggrieved party, if not by some statutory review, then by the extraordinary and prerogative remedies of injunction or mandamus." (p. 472.)

There have been repeated holdings that the decisions of a board or other tribunal upon which the legislature has conferred the exercise of nonjudicial power, if made in good faith, are not open to judicial control or review, and that in such a case a court may go no farther than to prevent the abuse of the power so vested. In respect to the powers conferred on a municipal body it has been said that "the courts have no supervisory power over the policy of municipal legislation. They can only interfere to curb action which is *ultra vires* because of some constitutional impediment or lack of antecedent legislative authority, or because the action is so arbitrary, capricious, unreasonable and subversive of private right as to indicate a clear abuse rather than a *bona fide* exercise of power." (*City of Emporia v. Railway Co.,* 88 Kan. 611, 614, 129 Pac. 161; see, also, *Meffert v. Medical Board,* 66 Kan. 710, 72 Pac. 247; *Dever v. Humphrey,* 68 Kan. 759, 75 Pac. 1037; *Allen v. Burrow,* 69 Kan. 812, 77 Pac. 555; *Salt Co. v. Hutchinson,* 72 Kan. 99, 82 Pac. 721; *Richardson v. Simpson,* 88 Kan. 684, 129 Pac. 1128; *Board of Education v. Shepherd,* 90 Kan. 628, 135 Pac. 605; *Parrick v. School District,* 100 Kan. 569, 164 Pac. 1172; *Fairchild v. City of Holton,* 101 Kan. 330, 166 Pac. 503.)

The mandate of the constitution requiring the separation of

the powers of government has been consistently enforced, and the line or division between the departments has been fully considered and stated in some of the cases cited, and in *The State v. Johnson,* 61 Kan. 803, 60 Pac. 1068, and *The State v. Railway Co.,* 76 Kan. 467, 92 Pac. 606.

While the plaintiff alleged that the picture offered was moral and proper, it also averred that the board examined the picture and found it to be immoral. There is no averment in the petition or claim that the board acted arbitrarily, capriciously or fraudulently, or in excess of its powers. On such a pleading it must be assumed that the decision was made in good faith. The plaintiff states its conclusion to be that the picture is moral and proper, and then, in effect, alleges that the board mistakenly but honestly determined that it was immoral and unfit for exhibition. Fraud and dishonesty cannot be imputed to public officials unless plainly alleged and proven. We must presume that the board acted in good faith and that the decision that the picture is immoral was an honest exercise of the best judgment of its members. On this interpretation the demurrer should have been sustained.

The judgment is reversed and the cause remanded with directions to enter judgment sustaining the demurrer to the plaintiff's petition.

MASON, J. (concurring specially): I agree that the statute does not undertake to impose upon the court the duty of determining for itself whether a film passed upon by the board of review is moral and proper, or whether it is cruel, obscene, indecent or immoral. But I dissent from the statement (which appears to me to be dictum) that the legislature has no power to impose such a duty on a court. The members of the board of review are not given an option to accept or reject films at their pleasure. They have no discretion in the matter, except as that term may be used in the sense of implying the exercise of their judgment in determining the character of the film examined. If they decide that it is cruel, obscene, indecent or immoral, or that it tends to debase or corrupt morals, they must reject it; otherwise they must accept it. Whether it has any of these qualities is a question of fact which the legislature may commit to the final determination of an adminis-

trative tribunal, or of a court. An appeal may be authorized from a nonjudicial body to a court, where the matter to be passed on is one proper to be determined by a court in some other form of procedure. (12 C. J. 877.) The practice is well established of having an administrative tribunal pass upon conflicting claims, subject to an appeal to a court which shall finally determine some question of fact that is involved in the ruling made. (*Callen v. Junction City,* 43 Kan. 627, 23 Pac. 652; *Nash v. Glen Elder,* 74 Kan. 756, 88 Pac. 62; *Fong Yue Ting v. United States,* 149 U. S. 698.) Indeed the question has often been raised whether a determination by an administrative body of a question of fact affecting property rights is due process of law, unless an appeal to a judicial tribunal is provided—a question sometimes decided in the negative (12 C. J. 1241), but usually in the affirmative. (4 Dec. Dig., "Constitutional Law," § 318.) The question whether a particular film is immoral is doubtless one that can with advantage be finally committed to the judgment of an administrative body, but it does not seem to me to be so clearly nonjudicial that it may not be submitted to the determination of a court, if the legislature thinks that course advisable. Courts are frequently called upon to decide whether particular publications are obscene, the test being whether they tend to deprave and corrupt morals (29 Cyc. 1319), and I see no reason why they might not be required to decide similar questions with regard to films. I do not think a statute making it a misdemeanor to exhibit films which are cruel, obscene, indecent or immoral, or such as tend to debase or corrupt morals, and authorizing the granting of injunctions against their exhibition, would be nonenforceable because of any inability of the courts to decide whether a particular film fell within the prohibition.

PORTER, J., joins in the special concurrence.