No. 30,695.

The State of Kansas, ex rel. R. C. Woodward, as County Attorney of Butler County, et al., *Appellees*, v. W. R. Peal, as County Treasurer of Butler County, et al., *Appellees* (The Cities Service Gas Company et al., *Appellants*).

(13 P. 2d 302.)

Opinion filed July 9, 1932.

*W. E. Holmes, Mark H. Adams, Howard L. Baker,* all of Wichita, and *Gordon Stater,* of Oklahoma City, Okla., for the appellants.

*Roland Boynton,* attorney-general, *R. O. Mason,* assistant attorney-general, *R. C. Woodward,* county attorney, *C. Glenn Morris,* assistant county attorney; *Frank E. Lichlyter* and *J. B. McKay,* both of El Dorado, for the appellees.

*S. C. Bloss* and *E. T. Bloomer,* both of Winfield, as *amici curiæ.*

The opinion of the court was delivered by

SLOAN, J.: This was a mandamus proceeding involving the validity of certain *ad valorem* taxes levied against the property of the appellants by the board of county commissioners of Butler county for the year 1930. The appellants paid their taxes under protest, claiming that such taxes were illegally levied against their property. The county treasurer impounded the money paid under protest, and this action was brought to compel him to make distribution to the various funds. The protesters, who are appellants, entered their voluntary appearance in the case and by proper answers set forth their claims. The county treasurer answered, alleging that he was holding the fund by reason of the protest.

The case was tried on agreed facts to the effect that the fiscal year involved was from the second Tuesday of October, 1930, to the second Tuesday of October, 1931, and the tax levies were made upon that basis; that the assessed value of the county was $87,910,571, and a levy of 1.921 mills was made for the general revenue fund; that the county had a balance in the general revenue fund on October 14, 1930, of $96,265.18; that the miscellaneous income from sources other than the *ad valorem* taxes, which would become a part of the general revenue fund, was $139,507.93; that the amount expended out of the general revenue fund for the year ending October 14, 1930, was $282,946.87; that at the time the levies were made in August, 1930, the commissioners did not have before them the exact figures above stated, but estimates of what they would be on October 14, 1930; that the commissioners, on due consideration, determined to raise an amount of money sufficient to defray the cost of county government chargeable to the general revenue fund to October 14, 1931, and such further sum as would enable them to do business on a cash basis to January 1, 1932, or the next distribution of the taxes available for use in such fund, and that they estimated, in

addition to the balance in the fund at the end of the year and the taxes received from miscellaneous sources, that a levy must be made to raise from *ad valorem* taxes $168,000:

"That said commissioners in making said levy were compelled to and did exercise their judgment and discretion in estimating their needs for said year based on previous experience and available records, and were compelled to and did exercise their judgment as to the amount of miscellaneous revenue which would be received, based on previous experience and on conditions existing at the time said levy was made. It is further stipulated and agreed that the board of county commissioners, for the year involved in these protests, did not cause to be published in a newspaper in Butler county (and a newspaper of general circulation was published in Butler county during all such times) a report of receipts and expenditures of the year next preceding and the amounts allowed and a detailed statement of the indebtedness of the county at the end of such fiscal year."

The county commissioners, on August 21, 1930, adopted a resolution levying a tax against all the tangible property in the county, stating in the resolution the amount of the levy in mills on the dollar of assessed valuation, and the purpose for which it was made. The balance on hand in the general fund on October 14, 1931, was $120,-726.69.

The agreed statement of fact includes the other county funds, but it will not be necessary to discuss them in this opinion for the reason that the law controlling the general fund is applicable to the other funds, and its determination will settle all of the questions in the case.

The trial court held that the levies were legally made, and directed the county treasurer to make distribution of the fund.

The appellants predicate their appeal on two principal assignments of error. They contend that the levy is invalid for two reasons, first, that the commissioners failed to comply with the statute in making the levies, and, second, that the levies are excessive and beyond the power of the commissioners.

Taxation is a vexing problem. It is eternally with us. The power to tax inheres in the people. The legislature can only act within the limitations imposed by the constitution.

It is provided in the constitution:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as the legislature shall provide. . . ." (Art. 11, ¶ 1.)

It further provides:

"No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied." (Art. 11, § 4.)

Pursuant to the power vested in the legislature it enacted in 1868 what is now R. S. 19-241:

"It shall be the duty of the board of county commissioners of each county in this state to levy in each year, in addition to the taxes for other purposes, a county tax sufficient to defray all county charges and expenses incurred during such year, and twenty per centum in addition to make up for delinquent taxes of the same year; and it shall be unlawful for any board of county commissioners or county clerk to issue county warrants or orders in any one year to a greater amount than the amount of the county tax levied in the same year to defray county charges and expenses, less the amount levied for delinquencies."

. In 1876 it enacted what is now R. S. 79-1802:

"The county commissioners shall meet on the first Monday of August .in each year, and shall estimate and determine the amount of money to be raised by tax for all county purposes, and all other taxes which they shall be required by law to levy."

The legislature of 1868 also enacted the following:

"The boards of commissioners of their respective counties shall cause to be made out and published, yearly, in at least one newspaper in their county, if such there be, a report of receipts and expenditures of the year next preceding, and the amounts allowed, and a detailed statement of the indebtedness of the county, at the end of each year; but if there be no newspaper printed in said county, their said statement shall be posted in at least five public places in said county." (R. S. 19-227.)

"The board of county commissioners shall cause to be published a statement, at the close of every regular or special meeting, of all sums of money allowed, and for what purposes; said statement to be published once in some paper of general circulation in the county. They shall also publish a statement of the estimate of expenditures for the various purposes upon which they based their levy of a tax for the various purposes of revenue." (R. S. 19-228.)

It is argued by the appellants that before the commissioners can exercise the power granted in R. S. 19-241 they must comply with R. S. 19-227 and 19-228; that the publication notice provided for in the statute is a condition precedent to the levying of the tax, and the failure to comply with the statute vitiates the levy. It is conceded that the commissioners did not comply with the statute, and it must also be conceded that the commissioners have only such power as is granted by the legislature and they must follow the established pro-

cedure in the exercise of the power granted. (*Ness County v. Light and Ice Co.*, 110 Kan. 501, 204 Pac. 536.) Where the statute provides in definite terms that the commissioners shall publish a notice advising the taxpayers that they expect to exercise the delegated power and levy a tax, the failure to publish such notice invalidates the tax. (*Construction Co. v. Sedgwick County*, 100 Kan. 394, 164 Pac. 281.)

The legislature of 1868 enacted into law a bill entitled "An act relating to counties and county officers." (G. S. 1868, ch. 25.) This act included what is now R. S. 19-227 and 19-228. It was, however, a reënactment of R. S. 19-228, as this statute was a part of the law of 1859. The act of 1868 defined the duty of all the county officers and prescribed a penalty for the breach of official duty. The purpose of the statutes under consideration is evident upon their face. The legislature intended that the board of county commissioners should keep the public advised of the receipts and expenditures of the county and its indebtedness at the end of each year, and that the board should also publish a statement of the estimate of the expenditures for the various purposes upon which they based their levy of a tax for the various purposes of revenue. The wisdom of the statutes cannot be questioned, and the failure of the county commissioners to meet their requirements is inexcusable. The publications, however, are not made preliminary to the granting of any power, nor are they made a condition precedent to the exercise of any power granted. They impose a duty on the county commissioners, the breach of which subjects them to the penalty, but this cannot affect any power granted the commissioners with reference to the levying of taxes.

The legislature of 1868 caused to be enacted into law a bill entitled "An act to restrain the issuing of county warrants." (G. S. 1868, p. 295.) Section 1 of this act is now R. S. 19-241. It is made the duty of the county commissioners to levy a tax each year to defray all county charges and expenses and twenty per centum in addition to make up for delinquent taxes of the same year, and it is unlawful for the county officials to issue county warrants to a greater amount than the amount of the county tax levied in the same year. Without disturbing this statute the legislature of 1876 enacted what is now R. S. 79-1802, which requires the commissioners to meet in August of each year and estimate and determine the amount of money to be raised by taxes for all county purposes. The

power to make the levy is not conditioned on the publication of the estimated expenditures. The notices are directed to be published after the exercise of the power, and consequently are not a condition precedent to the exercise of the powers granted.

The appellants cite and rely upon the decisions of courts of other states. The statutes, however, under which these decisions were made differ from ours in that they prescribe a formal procedure to be followed before the levy is made. Such procedure is a condition precedent to the exercise of the power, and under such statutes the taxing authorities must perform the conditions or the attempted exercise of the power is a nullity. Our statute grants the general power to the board of county commissioners to levy a tax sufficient to defray all county charges and expenses. No preliminary steps are required and no conditions precedent are imposed, and this court is not warranted in interpreting into the statute a duty not intended by the legislature. The board of county commissioners had the power to make the levies, and the resolution passed at their meeting in August is a sufficient record of their action and meets the requirements of the statute.

It is contended on the part of the appellants that the tax levy is void because it is excessive. This argument is based on R. S. 19-241. This statute has been the authority for the board of county commissioners to levy taxes since 1868. The statute does three things: First, it vests the county commissioners with the power to levy a county tax sufficient to defray all county charges and expenses incurred during each year, and twenty per centum in addition thereto to make up for delinquent taxes. Second, it is made unlawful for the county officers to issue warrants in any one year to a greater amount than the levy made. Third, it may be fairly implied, without express language, that it was the purpose and intent of the legislature to limit the power to the levying of such taxes only as may, in the judgment of the board of county commissioners, be sufficient to pay the charges and expenses of the county government for the ensuing taxing year.

The appellants argue that the agreed facts show that the county commissioners, in making the 1930 levy, violated this statute. At the time of its meeting in August, 1930, it was estimated that there would be a cash balance in the county general fund of $96,000; that the miscellaneous income to such fund would be $139,507.93; that the sum necessary to defray the expenses of the county for the tax-

ing year was $282,946.87, and they levied a tax of $168,876.20. On these figures it is argued that the excess levy amounts to $112,-267.70. This is partly based on actual figures at the end of the taxing year, which, of course, the county commissioners did not have before them in making the levy. They could only estimate from past experience. On the other hand, the agreed facts show that in making the levy the county commissioners took into consideration the fact that it would be necessary for them to have sufficient funds to defray the cost of maintaining the county on a cash basis from October 14, 1931, to January 1, 1932, when the taxes collected for 1931 would be available. It appears, also, that prior to and at the time the levy in question was made it had been the practice of the county to charge all of the uncollected real-estate taxes against the general fund, crediting this fund with the interest and redemptions and paying the other funds the full amount of their levy. On September 8, 1931, the commissioners adopted a resolution changing this system and directing that the uncollected real-estate taxes be charged against each particular fund, and that such fund be credited with its proper share of the redemptions and interest. This, it is claimed, made a difference in the general fund of $85,847.79. It is also stipulated that the actual expenditure out of the general revenue fund for the fiscal year of 1930 was $49,574.37 less than the preceding year. This is commendable, and the taxpayers should not be permitted to complain because the commissioners reduced the cost of the county government.

It may be stated at the outset that the power to levy taxes was never intended for the purpose of accumulating funds for the remote future, or for contingencies which may never occur, or for the purpose of enriching the public treasury. The unnecessary accumulation of money in the public treasury is unjust to the taxpayers. On the other hand, the statute clearly contemplates that the county shall transact its business at all times on a cash basis and that interest-bearing warrants should be issued only in case of emergency which could not be foreseen, or when specially authorized by law. The affairs of the county should, as nearly as possible, be so managed as to have in its treasury at all times sufficient funds to meet its demands and as little in excess thereof as the proper handling of the county's business will permit. This, of necessity, vests the board of county commissioners with discretionary power. The courts will interfere to prevent the abuse of discretionary power,

but not to restrain its reasonable exercise. (*Smith v. Comm'rs of Leavenworth Co.,* 9 Kan. 296; *Comm'rs of Osborne Co. v. Blake,* 19 Kan. 299; *Comm'rs of Marion Co. v. Comm'rs of Harvey Co.,* 26 Kan. 181; *Board of Education v. Shepherd,* 90 Kan. 628, 135 Pac. 605; *State, ex rel., v. Levitt,* 96 Kan. 450, 152 Pac. 18.)

It is argued by the appellants that the county commissioners had no right, in estimating the amount of taxes necessary to pay the expense of the county, to take into consideration the period of time from October 14 to January 1. It appears to be within the power of the county commissioners to fix the fiscal or taxing year. The calendar year has no significance in fixing such fiscal year. (*Bank v. Reilly,* 97 Kan. 817, 156 Pac. 747.) If they have the power to determine the fiscal year it necessarily follows that they have the authority to adjust the taxes so as to enable the county to transact its business on a cash basis in adjusting its business to the fiscal year determined and fixed by the county commissioners.

There was at the beginning of the year a balance in the general revenue fund of $96,265.18. The appellants claim the benefit of this balance and at the same time contend that no balance should be left in the treasury at the end of the year. With this amount deducted from the expense of operating the county for the fiscal year in question, the balance is not unreasonable. The appellants cannot claim the benefit of the cash balance at the beginning of the year and object to the application of the cash balance at the end of the year on the succeeding year. This is inequitable and cannot be tolerated.

This reduces the question involved as to whether the county commissioners acted arbitrarily, capriciously or fraudulently. It is stipulated as a fact that the county commissioners exercised their judgment and discretion, taking into consideration their previous experience and available records. The cost of government is not a fixed charge, nor are the assets out of which taxes are to be raised always uniform. The county commissioners must take into consideration, in making a levy, any change that will be apparent in the needs of a particular fund, the amount of taxes that may be received from miscellaneous sources, and the amount of taxes that may not be paid. It was their responsibility and they had the authority to determine the amount necessary to maintain the county government, and in the absence of a clear abuse of this discretionary

power their action cannot be interfered with, unless the amount is so grossly excessive as to show a fraudulent purpose in making the levy. The agreed facts obviate any suggestion of fraud or bad faith or lack of consideration on the part of the county commissioners. Under such circumstances we cannot say that the levy is so excessive as to render it void.

"The law confides in certain officers the discretion to determine the extent of the levy, and the amount of money necessary to meet the current expenses of municipalities, and the courts cannot supervise or control such discretion." (*Ward v. Piper*, 69 Kan. 773, syl. ¶ 1, 77 Pac. 699.)

In the case of the *People v. I. C. R. R. Co.*, 266 Ill. 636, 641, the court said:

"Where the board, acting in good faith, estimates the amount that will be required for building purposes, and it turns out that the estimate is slightly in excess of the amount actually needed for building purposes, such variation between the amount levied and that actually used for such purpose would afford no justification for refusing to pay the tax. In *People v. Chicago & Alton Railroad Co.*, 257 Ill. 208, this court, on page 212, said: 'It would be obviously impossible for a board of school directors to know in advance the exact amount that might be required during the year for "the improvement, repair or benefit of the school buildings and property." School boards are expressly authorized by the statute to levy a building tax, out of which they may pay for the improvement and repairs of the buildings and property of the district and expenses for their general benefit. The mere circumstance that in estimating in advance the amount that may be necessary for these purposes a larger amount is levied than that actually required is no reason why a taxpayer should refuse to pay his taxes, unless the amount levied is so grossly excessive as to show a fraudulent purpose in making the levy.'"

This, we think, is in accord with the general rule which this court has followed in relation to the exercise of the powers granted to administrative boards by the legislature. It has repeatedly held that it will not disturb the action of a board or officer acting within the scope of the power granted unless bad faith or species of fraud taints the action. (*Photo Play Corporation v. Board of Review*, 102 Kan. 356, 169 Pac. 1154, and cases there cited.)

The appellees raise the question of the sufficiency of the protest filed with the county treasurer. In view of the conclusion we have reached it is unnecessary to consider this question.

The judgment is affirmed.