ROBERT G. ELLIOTT *vs.* JOHN M. LOCHNANE; PETER T. ABELL, JOSEPH CARR, WILLIAM SHARP and GREEN B. REDMAN.

Action was brought May 21st, 1859, for damages in destroying personal property on May 21st, 1856. The defendants set up in defense the three years statute of limitation of 1855, and the two years statute of limitation of February 11th, 1859 ; to which the plaintiff demurred, and the demurrer was overruled as to the answer, and " carried back to the plaintiff's petition, and, upon argument, sustained as to the petition." *Held,* on appeal by plaintiff below, that the petition states facts constituting a cause of action, and that the sustaining of the demurrer was error—*held,* that the answers of the defendants below, setting up the statutes of limitations were bad on demurrer.

The provision in the act, approved February 12th, 1858, entitled " An act to establish a Code of Civil Procedure," (which took effect April 1st, 1858,) that actions for taking, detaining and injuring personal property could only be brought " within four years, next after the cause of action shall have accrued," supplied and repealed the three years limitation of the act of 1855, and added one year to the time for commencing suits on that class of causes of action, in all cases, not barred by the law of 1855, on the first day of April, 1859.

The provision of the Civil Code of 1858, that civil actions can only be commenced within the periods prescribed therein "after the causes of action shall have accrued," does not confine the effect of the title to actions thereafter to accrue, but the provision applies to all actions not then commenced or barred, whether the cause had or had not accrued, and continued in force until it was suppled, and, by implication, repealed the provisions of the Code of 1859.

Under the Organic Act the legislative power of the Territory was vested in the Governor and Legislative Assembly, and acts of the Legislature became laws at the date of their approval by the Governor. Legislative acts required no " title."

Where two statutes are in any respect, in both language and meaning, irreconcilably repugnant, the provisions of the statute last enacted, repeals those of the former, with which they conflict.

*Held,* that section one of " an act amendatory of ' an act to establish a Code of Civil Procedure,' approved February 10th, 1859," providing " that the act to which this is amendatory, shall take effect and be in force from and after the passage of this act," could not put the Code, approved February 11th, 1859, into force on February 10th, but that the Code went into effect June 1st, 1859, according to its provisions.

This was an action brought by Elliott, plaintiff below, against the defendants, to recover damages for the taking, injuring and destroying of a printing press and other personal property belonging to the plaintiff. The petition was filed in the Court of original jurisdiction on the 21st day of May, 1859, and alleged that on the 21st day of May, A. D. 1856, the defendants, with force and arms, took, injured and destroyed certain personal property of the plaintiff, &c., and prayed for damages, &c.

Three of the defendants, Abell, Redman and Carr, severed, and filed separate answers, setting up substantially the grounds of defense.

First. A general denial.

Second. That the cause of action had not accrued within three years.

Third. That the cause of action had not accrued within two years.

To the second and third grounds of defense the plaintiff demurred, for the reason that neither of said grounds was sufficient to constitute a defense to the action.

The issue of law thus joined was tried at the October term A. D. 1862, of the District Court of Jefferson county, and the demurrer of plaintiff was overruled as to the answers, and carried back to the petition, and judgment rendered for the defendants.

The petition in error assigns the following as grounds of error:

That the Court below erred in overruling the demurrer of plaintiff to Defendants' answer, and asks that the judgment of the District Court be reversed, and the cause remanded for further proceedings.

*Louis Carpenter*, for plaintiff in error.

I. The statute of limitation, in force at the time of commencing an action, determines the rights of the parties.

Elliott *v.* Lochnane and others.

(*Patterson vs. Gains*, 6 *How.*, 601, 602; *State vs. Swope*, 7 *Porter, Md.*, 91; *Angel on Limitations*, 18, *note* 3, 4*th ed.*)

II. That the limitation act of April 1st, 1858, putting the period of limitation in actions for trespass to personal property at four years, repealed, by implication, the act of 1855, which gave three years. (*State vs. Swope*, 7 *Porter*, 91; *Ross vs. Duval*, 13 *Pet.*, 64: *Stimpson vs. Pond*, 2 *Curt. C. C.* 502; *Morton vs. Sharkey, K. T. C.; Angel on Limitations*, 18, *note* 3.)

III. But plaintiff was in time under the law of 1855. The first day should be excluded, and the last included, in the computation of time, under statutes of limitation. (*Cornell vs. Molton*, 3 *Den.* 14; *Blane vs. Beehler*, 12 *Mo.* 477; *Kimme vs. Osgood's Ad.*, 19 *Mo.*, 60; *Griffith et. al. vs. Bogart et. al.* 18 *How.* 163; *Smith vs. Cassels*, 9 *B. Mon.* 192; *Owen vs. Slater*, 26 *Ala.* 547; *Long vs. Phillips*, 27 *Ala.*, 311; *Angell* 44, 45, *notes; Code Civ. Pro.* § 597.)

IV. As to the two years limitation—

The defendants contend that the act of February 10th, 1859, entitled " an act to establish a code of civil procedure, passed February, 1859," (*Laws '59, p.* 1849,) went into effect on the 10th day of February, and carried the principal act into effect with it; (§ 1, *act of Feb.* 10,) that by the twenty-second section of the Code of 1849, this action would be barred in two years from the accruing thereof, which period had elapsed before this action was commenced.

The principal act was approved February 11th, 1859, and was to take effect from and after June 1st, 1859.

The last expression of the legislative will must prevail. (*Sedgwick on Stat. Constr.*, 124, 415.

The case of *Southwark Bank vs. Commonwealth*, (26 *Penn. R.* 448, 449—*referred to in Sedg.* 416,) appears to sustain the view that the act last signed by the Governor is not necessarily a repeal of another act previously signed. Whatever may be the law in Pennsylvania, we contend that the Penn-

Elliott *v.* Lochnane and others.

sylvania case is not law in Kansas. By the organic act, "the legislative power and authority of the Territory of Kansas," was vested in a Governor and Legislative Assembly. (§ 22.) This is no new arrangement. (1 *Black. Commentaries*, 133.) In nearly all the States, the legislative power is vested in the Senate and House of Representatives, and the Governor has simply a veto power. By the organic act, the Governor was made a constituent part of the law making power ;—he constituted one of the co-ordinate elements of the legislative mind. And there can be no law without a concurrence of all these elements. Admitting, for the sake of the argument, that the act of February 10th may, perhaps, show that it was the intent of the Council and House to put the Code into effect forthwith, yet it might not have been the intent of the Governor ; and we are to presume that he acted rationally, and intended the legitimate consequences of his own acts. The intent of the Council and House is not the law. By legislative intent is meant the intent of the entire legislative mind, including the Governor as constituent part thereof. But we are not prepared to admit that these two acts of February 10th and February 11th, show that it was the intent of the Council and House to put the Code into effect on the 10th of February. An inspection of these two acts, will show that the amendatory act is a specimen of the hasty and inconsiderate legislation, so prevalent at the present day, and does not express the deliberate and premeditated intent of the Legislative Assembly. And it is the duty of the Courts, as the great conservative branch of the government, to interpose their influence against the consequences of such legislation, and in doubtful cases, so to expound the law as to advance right and justice.

V. The construction contended for by defendants would be retrospective, and acts of limitation never receive a retrospective construction by the Courts. (*Sedg.* 196, 197, 682, 683; *Murry vs. Gibson*, 15 *How.*, 423; *Watts vs. Kirby*, 15 *Ill.*,

9

200; *Fuller vs. Havenk*, 1 *Root Ct.*, 233; *Billings vs. Hall*, 7 *Cal.* 5; *Angel*, 18; 14 *Mo.* 517.)

There can be found no case in which the courts have construed a law of limitation to cut off all remedy at its passage. (*State vs. Swope*, 7 *Por.*, *Md.* 91.)

Would a law, cutting off all remedy, be constitutional? I put this in the form of a query rather than of a proposition. If this action arose out of contract, there would be no doubt. (*Sturgis vs. Crowninshield*, 4 *Whea.* 200, 207; *Bronson vs. Kinsie*, 1 *How.* 315 et. seq.; *McCracken vs. Haywood*, 2 *How.* 612; *Gantley's Lesee vs Eweing*, 3 *How.*, 707.)

Considering this as an action *ex delicto*, would the legislative power over the remedy, be greater or more absolute?

There is an admitted distinction between the right and the remedy—see case of *Sturgis vs. Crowninshield*, and others referred to above.

But a Legislature has no more power to destroy a right by acting on the remedy, than by enacting a law, which, by its very terms, would expressly destroy that right. This proposition is fully supported by the cases above referred to.

But, on principle it is contended, that there can be no right or obligation, which the law refuses to enforce. The very term, *legal right*, implies a remedy to enforce that right. If, theoretically, there can be a legal right, without a remedy for the violation of that right, it amounts to nothing more than a mere abstraction. The connection between the right and the remedy is so intimate that, to destroy the remedy is, in effect, to destroy the right.

When the act of February 10th was passed, the legislative power of the Territory was limited by the organic act and the constitution of the United States. (*Organic Act*, § 24.) "No person shall be deprived of life, liberty or property, without due process of law." (*Const. U. S., Amendments, Art.* 5.) This simply enunciates a great principle, which lies at the foundation of constitutions and legislative enactments. (1

*Black. Com.*, 138, 89, 91; 1 *Kent, Part* 4; *Billings vs. Hall*, 7 *Cal. p.* 1.)

By due process of law is "generally implied *actor reus judex*, regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings. (18 *How.* 280; *Sedg.* 610.)

A law that deprives a ⌐man of his property, without due process of law, is unconstitutional and void.

The plaintiff had a perfect right of action on the 10th day of February, 1859—the action survives, (*Code* 1858, § 398,) and the right of action is assets in the hands of the administrator.

We hold that this right of action was property—within the meaning of the term as used in the constitution—although the form of the action may be *ex delicto*, and that a law destroying that right of action is unconstitutional.

The petition sets up that the defendants injured, &c., certain personal property, &c., of plaintiff. The second and third grounds of defense confess and avoid.

The plaintiff's right to own, possess and enjoy property, is a vested right; as a right without a remedy, is a mere abstraction, and utterly valueless, it would appear to follow necessarily, that there is a vested right in the remedy for violating that right. This is the principle pervading the case of *Bronson vs. Kinsie*, and other cases above referred to. (*Morton vs. Sharkey*.)

By the common law, which is made the law of Kansas, a person had a vested right in the remedy. (1 *Blackst.* 141; *Sedg.* 214, *note*; *see, also, Kansas Const., Bill of Rights*, § 18.)

We hold that the Legislature had not the power to transfer the plaintiff's property to the defendants, without "due process of law;" and to deprive the plaintiff of his remedy, is, in effect, transferring the property of this plaintiff to these defendants. If John Doe takes a horse by force and arms,

and the Legislature deprives his victim of a remedy to recover his property or damages, to whom does the horse belong? To John Doe, of course. He has a title by prescription; just such a title as a man has, in whose favor the statute of limitation has run its length. (*Angel* 1.) To cut of all remedy, is but an indirect way of depriving a person of his property without due process of law. An act directly prohibited cannot be done indirectly. (3 *How.*, 718, *above referred to.*)

But even if the construction contended for by the defendants, does not contravene the letter of the constitution, such a construction does contravene its spirit, and is unjust—contrary to natural equity and right reason—is absurd, and productive of great hardship. A construction which would lead to such results, is never adopted, if the statute is susceptible of any other. (1 *Black.* 91; *Sedg.* 183, 184, 134; *State vs. Swope,* 7 *Port.* 91; *Angel,* 17.)

*Samuel A. Stinson,* for defendants in error.

I. The two years statute of limitation of the Code of 1859, was applicable in this case, and controlled the right of these parties.

The statute of 1859, was put in force by the amendatory act on the 10th day of February, 1859, and prior to the commencement of this action, notwithstanding the apparent inconsistency of the dates of the approval of the two acts. It is the duty of the Court to give expression to the manifest intention of the legislative power, regardless of technical subtleties. Here the intention is apparent. The amendatory act refers to the Code by its title, and as having been passed in February, A. D. 1859. The journals show that the bills were passed in proper order, and the discrepancy in the date of their approval must be attributed to accident or mistake. Any other construction involves the absurdity of making the original act repeal the act to which it is amendatory. (*Morton*

*vs. Sharkey, Kansas Supreme Court, Ter.; Sedg. on Stat. and Const. Law,* 415, 416; *The Southwark Bank vs. The Commonwealth,* 26 *Penn.,* 448, 449.)

II. The act of 1859 repealed all former laws on this subject, by implication.

III. The statute of limitations commences running when the cause of action accrues. (*Angel on Lim.,* § 42; *Smith vs. Morrison,* 22 *Pick.,* 430.)

IV. Either the act of 1859 applies to this case, or else it is controlled by no statute. There is a distinction between actions arising out of contract and actions founded on torts, so far as the power of the Legislature to interfere with the remedy is concerned. In the former it has been both intimated and held by the Courts that a law depriving a party of all remedy in an action founded on contract, "would impair the obligation of contracts." (*Angel on Lim.,* § 23; *Charleston Bridge vs. Warren Bridge,* 11 *Peters,* 420; *Call vs. Hagger,* 6 *Mass.,* 433; 22 *Pick.,* 430.)

The constitution has not interposed the same jealous care to protect the rights of those whose claims grow out of torts. (*Dark vs. Van Kleek,* 7 *John.* 477.)

V. Even if the former statutes of limitation were not repealed by implication by the amendment of the Code of 1859, they were directly repealed by the general repealing law of that year, which took effect in June, 1859; and there would be no limitation applying to such causes of action as that upon which this action is brought.

VI. Mere irregularity will not warrant the Court in reversing the judgment.

VII. The common law rule which refers every demurrer back to the first pleading, has not been changed.

VIII. The statute of limitation can be taken advantage of on demurrer. (*Van Sandford's Pleadings; Swan's Pleading and Practice.*)

By the Court, EWING C. J.   This was an action brought
by plaintiff in error against defendants in error in the District
Court sitting in Douglas county on the 21st day of May, 1859,
to recover damages for an alleged destruction by defendants,
on the 21st day of May, 1856, at the town of Lawrence, of a
library and a newspaper establishment, owned by plaintiff.

Defendants Abell, Carr, and Redman, severally answered,
pleading—

First. A general denial.

Second. The statute of limitations of 1855, which provids
that " an action for taking, detaining or injuring any goods
or chattles " " shall be commenced within three years. "
(*Laws of* 1855, *p.* 96.)

Third. The statute approved February 11th, 1859, which
provides that such action " can only be brought within two
years. "   (*Laws of* 1859, *p.* 84.)

By consent, the cause was transferred to the District Court
sitting in Jefferson county, and there plaintiff filed a demurrer
to each of the pleas of the statutes of limitation, which was
overruled as to the pleas, but sustained as to the petition, to
which ruling plaintiff excepted, and files his petition in error
here.

The act approved February 12th, 1858, which took effect on
the 1st of April of that year, provided that " actions for taking,
detaining or injuring personal property " can only be brought
within four years next after the cause of action "shall have
accrued. "   This provision supplied and repealed the three
years limitation of 1855 above quoted, and added one year to
the time for commencing suits " for taking, detaining or in-
juring personal property," in all cases not barred by the law
of 1855, on the 1st day of April, 1858.

The provision in section fifteen of the limitation law of 1858,
that " civil actions can only be commenced within the periods
prescribed in this title after the cause of action *shall have ac-
crued,* " does not confine the effect of the title to actions

thereafter to accrue. The thirteenth section of that law provides that " this title shall not apply to actions already commenced, but the statutes now in force shall be applicable to such cases "—plainly showing that the title was meant to apply to all actions not then commenced or barred, whether the cause had or had not already accrued.

The provision of the law of 1858 above quoted, continued in force until it was supplied and, by implication, repealed by the provision of the law of 1859 above quoted. The last named provision is part of the act to establish a Code of Civil Procedure, approved February 11th, 1859, the last section of which is as follows :

Section 624. " This act to take effect and be in force from and after the first day of June next. "

On the 10th of February, 1859, an act was approved, entitled " An act amendatory of 'an act to establish a Code of Civil Procedure,' passed February, 1859, " which provides—

" Section 1. The act to which this is amendatory shall take effect and be in force from and after the passage of this act. "

" Section 3. This act shall take effect and be in force from and after its passage. "

Evidently the first section of the last named act could not put the Code into effect on the 10th of February, for on that day the Code did not exist. Though that section might not be absolutely void, because it seeks to put into instant effect a law not in existence, it certainly is so if in plain and irreconcilable conflict with such law when thereafter enacted. It is a rule without exception, that where two statutes are, in any respect, in both language and meaning, irreconcileably repugnant, the provisions of the statute last enacted repeal those of the former with which they conflict. It is true that provisions in letter conflicting are to be construed if possible, so that both may stand ; but where, by no construction both can stand, the intention manifest in the latter law is uniformly given effect

by the Courts. This rule of construction is announced in many English and American decisions, and controverted in none; and it is as well supported by reason as by authority. The case of the *Southwark Bank vs. the Commonwealth* (26 *Penn. R., pp.* 380-2, *as cited in Sedg. p.* 416,) seems to affirm rather than question the rule.

By the organic act, the legislative power of the Territory was vested in the Governor and Legislative Assembly, and at the date of approval by the Governor the acts under consideration became laws. That approved February 10th, provides that the Code go into effect on that day, while that approved February 11th, provides that it shall go into effect on the first of June thereafter. Nothing can be gathered from other parts of either law to effect the construction of these contradictory provisions, and we therefore feel bound to carry into effect the provision in the act of February 11th, as being the last expression of the legislative will.

It is argued that this conclusion involves the absurdity of having a provision of an act entitled *amendatory* repealed by a law it purports to amend. The organic act required no title, and hence this is no part of the law, but is a mere clerical prefix. It may be resorted to in aid of interpretation to show that the law when passed was intended to amend the Code; but whatever was the legislative intention on the 10th of February as to the Code, as shown in this proposed amendment, the intention as clearly expressed on the 11th can not be effected by it.

We do not choose to consult theories as to the origin of the singular conflict in these laws. It matters not how it originated, or which law passed either or both branches of the Legislative Assembly first. The legislative intent is fully expressed when and not until a bill becomes a law, and it takes date and effect then. The contradictory intentions as to when the Code should take effect are plainly expressed in the two laws; and to allow the intention expressed first to

annul that expressed last, or any theory as to the origin of the contradiction, would be to seek legislative intent by guessing instead of by interpretation.

We hold, therefore, that, as the provision of the law of 1855 above quoted, limiting the time for bringing actions "for taking, detaining or injuring goods or chattels," was by implication repealed on the 1st of April, 1858, and as the provision of the law of 1859 above quoted, limiting actions in like cases, was not in force when this suit was brought, the grounds numbered two and three in the several answers of defendants were bad on demurrer. In the argument in this Court no objections were presented to the petition. We suppose the District Court held it demurrable, because it shows on its face that the cause of action accrued on the 21st of May, 1856. Holding as we do that the action was not barred, we think the petition states facts constituting a cause of action, and therefore the demurrer should not have been sustained as to it.

Ordered by the Court that the order overruling the demurrer as to the answers, and the order sustaining it as to the petition, be reversed; and the cause remanded to the District Court with instructions to sustain the demurrer to the second and third pleas of the several answers.

Judgment and execution here against defendants in error for costs.