No. 20,470.

THE LEAVENWORTH NATIONAL BANK et al., *Plaintiffs,* v. H. V. REILLY, as County Treasurer, etc., et al., *Defendants.*

### SYLLABUS BY THE COURT.

1. "FISCAL YEAR"—*What it Embraces.* The term "fiscal year" is the year embraced in the annual term for the opening and closing of financial accounts.

2. SAME—*When "Fiscal Year" in Leavenworth County Begins.* The "fiscal year" in Leavenworth county, for the regulation of its county finances and for the opening and closing of its financial accounts, begins on the second Tuesday in October of each year.

3. COUNTY WARRANTS—*Limitation of Issue.* The issue of warrants in any one fiscal year to defray the general expenses of Leavenworth county is limited to the maximum revenues which the levy for that fiscal year will produce, and is determinable by a calculation applying the levy to the assessed valuation of the county.

4. SAME. The board of county commissioners of Leavenworth county has no power to issue county warrants for the payment of current expenses in excess of the revenues to be derived from the general tax levy made to meet such expenses.

5. SAME. The board of county commissioners of Leavenworth county has no power to issue county warrants in any one year to be redeemed by anticipating and impairing the revenue of succeeding years.

6. "FISCAL YEAR"—*County Commissioners No Power to Change.* The board of county commissioners of Leavenworth county has no power to change the beginning of the fiscal year from the second Tuesday of October, 1914, to January 1, 1915, to serve the temporary financial convenience of the county.

52—97 KAN.

7. SAME—*Certain Former Opinions Disapproved.* The cases of *Garfield Township v. Dodsworth,* 9 Kan. App. 752, 58 Pac. 565, and *Garfield Township v. Hubbell,* 9 Kan. App. 785, 59 Pac. 600, disapproved as precedents governing the case at bar.

8. VOID COUNTY WARRANTS—*Issued for Valid Indebtedness—May be Paid How.* When county warrants have been issued in excess of the general maximum revenue fund for the current fiscal year, but for which the county got value received, they can be paid in two ways; (1) by the slow collection of delinquent taxes and miscellaneous items which may inure to the general revenue fund; or (2) by application to the legislature and obtaining its sanction authorizing their payment out of later general revenues of the county.

9. VOID COUNTY WARRANTS—*Purchasers Subrogated to Rights of Original Creditors—Payment by Future Levies.* Where county warrants are void only because issued in excess of the maximum revenues derivable from the general levy for the current fiscal year, the holders of such warrants are subrogated to the rights of the original creditors whose claims against the county were the basis of such void warrants; and if the claims were lawful, the county is liable to the subrogated holders of such claims and provision may be made to meet their payment in future annual levies, but no such future annual levy can exceed the maximum fixed by statute.

Original proceeding in mandamus. Opinion filed April 8, 1916. Writ denied. Opinion denying a rehearing (*post.,* p. 827) filed May 13, 1916.

*W. W. Hooper, A. E. Dempsey,* and *Louis H. Wulfekuhler,* all of Leavenworth, for the plaintiffs.

*Lee Bond,* and *M. N. McNaughton,* both of Leavenworth, for the defendants.

The opinion of the court was delivered by

DAWSON, J.: This action invokes the original jurisdiction of this court for a writ of mandamus to compel the county treasurer of Leavenworth county to pay certain county warrants held by the plaintiffs, which are the principal banking houses of the city of Leavenworth.

The petition alleges that in March, 1915, Leavenworth county was without funds to pay its current obligations, matured and maturing, during the year 1915, except by issuing county warrants, and that the board of county commissioners requested a conference with the bankers of Leavenworth, and that such conference was held and it was orally agreed thereat that the plaintiff banks would cash all warrants lawfully

issued, not to exceed the amount that could be levied and raised by taxation for current expenses during the year 1915, which was approximately $52,000, and it was further orally agreed that the county warrants would be taken by the banks at par, and would be paid out of the first money available, "collected for taxes under the levy made by the board of county commissioners in August, 1915, for the current general taxes of that year."

The plaintiffs cashed warrants amounting to $24,793.95, which were issued between April 1, 1915, and November 1, 1915. The warrants were presented to the county treasurer, and registered, numbered, and stamped "Not paid for want of funds."

On November 1, 1915, the warrants were presented for payment, there being then ample funds in the county treasury raised by the levy made in August, 1915; but payment was refused by the treasurer on the ground that the funds raised by the levy of 1915 could not be devoted to the payment of these warrants.

The board of county commissioners make no defense to this lawsuit.

In his return to the alternative writ of mandamus, the county treasurer alleges that there is no record of the alleged agreement between the plaintiffs and the county commissioners; that the fiscal year of Leavenworth county begins on the second Tuesday of October; that he has been in the public service in the county treasurer's office almost continuously for over twenty years, and that during all that time the financial affairs of the county had been conducted on that basis; that when he became county treasurer, in October, 1915, he found that between April 1, 1915, and October 1, 1915, warrants amounting to $39,601.93 had been issued and stamped "Not paid for want of funds"; that he immediately examined the records and found that the general fund for the year 1914 had commenced on the second Tuesday in October, 1914; and that (by order of the board of county commissioners) the general fund for the year 1914, was changed to begin January 1, 1915, but that the other funds continued as theretofore, the only changes being those affecting the general funds of 1914 and 1915.

Answering further, the county treasurer recites that he discovered that the sum of $14,987.05 remained in the general fund for 1914, and thereupon he paid out that amount to the plaintiffs on the warrants held by them; that the total amount of warrants between October, 1914, and October, 1915, was $76,580.48, and that the levy for that year raised $53,261.67, and that (by law) no part of the next succeeding year's levy and revenue could be devoted to the payment of the excess warrants of the preceding year; that he is at all times ready to pay the plaintiffs' warrants out of any funds which may yet be realized from the levy of 1914; that he has no personal interest in this action except to protect himself and his bondsmen from the consequences of paying out public moneys illegally, and asks for his costs and a reasonable attorney's fee.

Reduced to shorter terms, the questions to be considered are: (1) Does the fiscal year of Leavenworth county begin on the second Tuesday in October in each year? (2) Are the general expenditures of the county limited to the revenues raised by the levy of that year, together with the miscellaneous fees and minor items which accrue to the general revenues? or can the board of county commissioners disregard the maximum general revenues possible in any year and issue warrants in excess thereof? and (3) Can the county commissioners change the date of the fiscal year to suit the temporary financial convenience of the county?

Before examining these questions, we note that there is nothing vicious, fraudulent, or questionable in the slightest degree inhering in any of the warrants, and that the county got value received for each of them. Whether their payment can be compelled at this time by mandamus is the gist of this controversy.

1. There is no general uniformity throughout the state touching the beginning of the fiscal year. A fiscal year is simply the year embraced in the annual term for the opening and closing of financial accounts.

In *Moose v. State*, 49 Ark. 499, 5 S. W. 885, which was a prosecution of a county clerk for failing to publish a financial report of the county within thirty days after the annual settlement with the collector (treasurer) of the county for the fiscal year, it was held that the fiscal year, so far as it relates to the

financial affairs of the counties, must mean the current year embraced between the dates of the collector's (county treasurer's) annual settlements; and that the "fiscal year ending 1887" covered the period from the collector's settlement in 1886 to his settlement in 1887.

In the state's own financial affairs, the fiscal year begins on July 1. (Gen. Stat. 1909, § 8955.) In first-class cities under the old form of government the fiscal year begins on April 1. (Gen. Stat. 1909, § 1038.) In first- and second-class cities under commission government the fiscal year begins on January 1. (Gen. Stat. 1909, §§ 1328, 1500.)

The defendant alleges, and the fact is not denied, that for many years the fiscal year of Leavenworth county has been considered and dealt with by the county authorities as beginning on the second Tuesday in October in each year. Whether this is true of the counties of this state generally may not have to be determined here.

In 1871 a special law was enacted relating to levies, county revenues, and taxation in Leavenworth county. (Laws 1871, ch. 148.) In 1876 another special law was enacted, concerning bond issues, funding indebtedness, issue of warrants, etc. (Laws 1876, ch. 36.) In that year, also, another special act relating to Leavenworth county tax levies was adopted by the legislature. (Laws 1876, ch. 90.)

In 1879 another special law was enacted relating to taxation in Leavenworth county, fixing the fiscal year of that county, limiting the issue of warrants to the sum raised by the levy for each fiscal year and providing penalties for its violation, etc. (Laws 1879, ch. 120.) By this act the fiscal year of Leavenworth county was thus defined:

"SEC. 2. The fiscal year of the county of Leavenworth shall begin with the second Tuesday of October, and the tax levied by virtue of section one of this act, in the year eighteen hundred and seventy-nine, and each year thereafter, shall be applied to the expenses of the fiscal year beginning the second Tuesday of October in each year; and no part of the tax levied in any one year shall be used to pay indebtedness due before the beginning of the fiscal year for which such levy was made."

Other sections of this special act restrict the issue of warrants, forbid the remissions of taxes and penalties, and make elaborate provisions for the discipline and punishment of county officials who violate its terms.

In 1885 a general law relating to county tax levies was enacted (Laws 1885, ch. 110) ; and this was followed by a lawsuit to determine whether the special act of 1879 or the general act of 1885 controlled the legal limit of general tax levies in Leavenworth county. This was the case of *Howard v. Hulbert,* 63 Kan. 793, 66 Pac. 1041. In stating the question, Mr. Justice Cunningham said:

"Did the general law of 1885 repeal, by implication, the special act of 1879? . . . We do not overlook the rule that repeals by implication are not favored, but we are equally well aware of the rule 'that where two statutes are in any respect, in both language and meaning, irreconcilably repugnant, the provisions of the statute last enacted repeal those of the former, with which they conflict.' . . . That the two acts are repugnant we may not doubt. . . . We conclude that the general act of 1885 repealed the special act of 1879 and that the tax levy in Leavenworth county for 1890, being in excess of the amount the commissioners were authorized to levy, the sale of the real estate in question for the delinquent taxes was unauthorized." (pp. 795, 798.)

Of course, the only matter before the court in *Howard v. Hulbert,* supra, was the legality of the tax levy, and this only involved a consideration of section 1 of the special act of 1879, relating to the amount of tax levies and current expenses in Leavenworth county. When the court was impelled to hold that the later general act superseded the earlier Leavenworth special act by implication, the question of the levy was the only one under consideration. It had no concern with the other provisions of the Leavenworth special act, nor with the provision in section 2 of that act defining the Leavenworth county fiscal year. We see no reason for holding that the other sections of the special act of 1879, limiting indebtedness, the issue of warrants, providing punishment for official misconduct and the like, have been repealed by implication.

It does not appear that the decision in *Howard v. Hulbert* was given the operative interpretation of repealing section 2. *Howard v. Hulbert* was decided in December, 1901. For fourteen years thereafter, and until the spring of 1915, the operative interpretation of the law by those officially charged with its administration in Leavenworth county was that section 2 of the act of 1879 defining the fiscal year was still in effect.

Bank v. Reilly.

The significance to be attached to the operative interpretation of an act is one which this court has heretofore considered. In 1899 a question arose as to whether an act relating to the fees of the clerk of the supreme court had been repealed. It was shown that the clerk had exacted the disputed fees for nearly thirty years and that the legislature had impliedly recognized them as legal by repeated reference to them. The court said:

"In all cases of ambiguity of statutes, the contemporaneous construction of the legislative and executive departments, and of the officials whose duty it is to carry the laws into effect will be allowed great and, oftentimes, determining weight." (*Harrison v. Benefit Society*, 61 Kan. 134, syl. ¶ 2, 59 Pac. 266.)

In the opinion it was said:

"The rule is well settled that 'in all cases of ambiguity the contemporaneous construction not only of the courts but of the departments, and even of the officials whose duty it is to carry the law into effect, is controlling.' (*Shell's Executors v. Fauche*, 138 U. S. 562, 11 Sup. Ct. Rep. 376, 34 L. Ed. 1040.)" (p. 140.)

Following this reasoning a little further, we note that some twelve years after the enactment of the general tax law of 1885 the legislature took cognizance of the Leavenworth special act of 1879. In 1897 two short acts were passed by the legislature amending section 2 of the Leavenworth special act of 1879. They both read as follows:

"SECTION 1. That section 2, of chapter 120, of the laws of 1879, be amended to read as follows: The fiscal year of the county of Leavenworth in the state of Kansas shall begin with the second Tuesday of October in each year." (Laws 1897, chs. 250 and 251.)

One of these acts was a house bill and the other a senate bill. The enactment of duplicates might argue that the legislature did not pay much attention to what it was doing; but on the other hand it might be urged that the legislature intended to be emphatic about it.

At all events, it is clear that the legislature intended, notwithstanding its general act of 1885, that the fiscal year in Leavenworth county should continue, as theretofore, to begin on the second Tuesday in October.

2. Proceeding now to consider whether the general expenditures of the county are limited in any one fiscal year to the

amount of money which may be expected from that year's levy (and the minor items which accrue to the general revenue fund and which need not be considered here), we find that this matter is about as fully covered by the General Statutes as by the Leavenworth special act of 1879.

Section 2311 of the General Statutes of 1909 provides:

"It shall be the duty of the board of county commissioners of each county in this state to levy in each year, in addition to the taxes for other purposes, a county tax sufficient to defray all county charges and expenses incurred during such year, and twenty per centum in addition to make up for delinquent taxes of the same year; and it shall be unlawful for any board of county commissioners or county clerk to issue county warrants or orders in any one year to a greater amount than the amount of the county tax levied in the same year to defray county charges and expenses, less the amount levied for delinquencies."

Section 2313 provides:

"Any board of county commissioners, or any county commissioner, or county clerk, who shall violate any of the provisions of this act, or neglect, or refuse to perform any duty herein imposed, shall be deemed guilty of a misdemeanor, and upon conviction thereof in a court of competent jurisdiction shall be subject to a fine of not less than ten dollars nor more than ten thousand dollars, and shall, moreover, be removed from office."

We do not overlook the cases of *Garfield Township v. Dodsworth,* 9 Kan. App. 752, 58 Pac. 565, and *Garfield Township v. Hubbell,* 9 Kan. App. 785, 59 Pac. 600, which have construed the year referred to in section 2311 of the General Statutes of 1909 to mean the calendar year. Of what significance has a calendar year on the fiscal affairs of a county? None whatever. The statutes provide for the year's levies to be made in August to provide revenues for the ensuing fiscal year. (Gen. Stat. 1909, § 9389.) The statutes provide for the county treasurer's quarterly fiscal settlements, the last quarter of the year being in October at the close of each year of his official term. (Gen. Stat. 1909, §§ 2144, 2145.) He takes his office on the second Tuesday in October immediately following the close of his predecessor's official term. (Gen. Stat. 1909, § 2138.) This is simultaneous with the close of the fiscal year for which his outgoing predecessor is required to render his financial account. The taxes levied in August to provide revenues for the ensuing fiscal year are due November 1, shortly and con-

veniently after the new fiscal year begins. (Gen. Stat. 1909, § 9391.) The first of January is designated as the date when the county treasurer's report for the *first quarter* of the fiscal year shall be published (Gen. Stat. 1909, § 2146), which negatives every assumption that it might be deemed the *commencement* of the fiscal year. With all due deference to the late courts of appeals, we can not see how its decisions just cited can be approved. Whether the *year* mentioned in the statute can in any case be said to be the calendar year we need not decide. Read in connection with the Leavenworth special acts of 1897 it must be said that the *year* referred to in section 2311 of the General Statutes of 1909 is the fiscal year.

From this it follows that in the county of Leavenworth the maximum amount of warrants which could lawfully be issued between the second Tuesday in October, 1914, and the second Tuesday in October, 1915, was controlled by the levy made in August, 1914, with such minor incidental items as may inure by law to the general revenue fund during that year and from the collection of such items overdue from preceding years. We are keeping in mind that each year's general revenue includes not only the receipts from the general tax levy but delinquent taxes of other years not needful for prior years' expenses, and also incidental fees, other stale claims collected, proceeds from the sale of property, etc., which properly inure to the general revenue fund.

In other words, it must be held that Leavenworth county can not in any one fiscal year issue more warrants than that year's revenues may reasonably be expected to meet; and it can not anticipate and impair the revenues of future years by an extraordinary issue of warrants in any one fiscal year. This proposition is fortified from two viewpoints; *first,* no power to do so has been granted by the legislature; and *second,* it has been forbidden by positive statutes, whether the inhibitions of the special act of 1879 or those of the general statutes be held to control in Leavenworth county. We need scarcely add the other obvious proposition, that if this were not the correct law of this case nothing would stand between the county and bankruptcy except the discretion of the board of county commissioners. There is probably no government, national, state, provincial or local, which does not in some

manner provide a check upon public expenditures, and if. the contentions of plaintiffs were correct, where would be the check upon the power of the board of county commissioners of Leavenworth county?

In *Comm'rs of Osborne Co. v. Blake*, 25 Kan. 356, a case not unlike the present, it was said:

"All the statutes upon the subject seem to contemplate that the county board will not create, nor allow to be created, liabilities against the county faster than the legal and proper taxes will pay them. But suppose the county board should allow liabilities to be thus created, then may all the creditors of the county convert their claims into judgments, and then compel the county board to levy county taxes vastly beyond the limits prescribed by said section 181? We think not." (p. 358.)

3. It needs but a word to dispose of the order of the board of county commissioners changing the fiscal year from October to January. Such action was in derogation of the statute. (Laws 1897, chs. 250 and 251.) It was done in an attempt to evade the statutory limitations upon county expenditures. It was only attempted to be done so far as affected the general fund out of which these warrants were to be paid. It did not pretend to make a change of the fiscal year so far as the other county funds were concerned. The order changing the fiscal year was without any legal effect whatsoever.

From the foregoing it must be apparent that the statutory restrictions and the precedents cited above are too formidable to be waived aside by a writ of mandamus directing the payment of these warrants at this time. This would ordinarily conclude our opinion. But the matter is one of such public interest that we may be permitted to make some suggestions to the end that no injustice be done to the parties who have acquired these warrants in actual if not technical good faith.

It is conceded that the *claims* for which these warrants were issued were valid and that the county got value received therefor. The present holders of the warrants are therefore subrogated to the rights of the original claimants. Although the warrants are void, the claims are valid. (*School District v. Dudley*, 28 Kan. 160, syl. ¶ 2; *Irvine v. Board of Com'rs* [of Kearny Co., Kan.], 75 Fed. 765.) The county must pay its valid debts. It did not pay them by issuing void warrants. The indebtedness is still outstanding. Presumably the indebt-

edness was incurred for salaries of county officials, stationery, lights, fuel and equipment for the county offices, jurors' fees, witness' fees and kindred legitimate county expenses. If the county has the money now to meet these debts—the claims for which the void warrants were issued—new vouchers should be made, new warrants issued and the claims paid. If the funds on hand will not pay all these claims and the levy for this current year will not produce sufficient revenues to pay them, these outstanding debts or claims should be taken into account in making next year's levy and they can all be paid in time. The safeguarding of the rights of the taxpayers, in the last analysis, is the statutory maximum levy for county expenses. (Gen. Stat. 1909, §§ 9394-9424.)

We have treated the warrants as void for the reasons given. In one sense they are not void. Without the aid of the doctrine of subrogation and the presentation of new vouchers and the issue of new warrants they could be lawfully paid out of any funds which may yet be collected from the levy of 1914 and preceding years. But that would be slow and probably altogether insufficient. It is also true that the legislature might authorize their payment by the county. (*The State v. Paulcy*, 83 Kan. 456, 112 Pac. 141; *Rose v. Estudillo*, 39 Cal. 270, syl. ¶ 4; 11 Cyc. 552.)

The writ is denied.

---

## OPINION DENYING A REHEARING.
### Filed May 13, 1916.

#### SYLLABUS BY THE COURT.

1. STATUTE OF 1862—*Restraining Issue of County Warrants—Still in Force and Effect.* The act of March 5, 1862, entitled, "An act to restrain the issuing of county warrants," is still in full force and effect, except as modified by later enactments fixing maximum tax levies for current county expenses.

2. SAME—*Former Decision Distinguished.* The case of *Bartlett, Treas., v. A. T. & S. F. Rld. Co.*, 32 Kan. 134, 4 Pac. 178, examined and held to have had no concern with the inhibitions in the act of March 5, 1862, forbidding boards of county commissioners and county clerks from issuing county warrants in any one year in excess of the revenues to be derived from the tax levy for such year.

3. STATUTES—*Conflicting Provisions—Later Act Supersedes.* Where a conflict exists between a later and an earlier act of the legislature, and where the later act does not attempt to cover all the provisions of the earlier act, both acts ordinarily remain in force except on the point where the acts are in conflict, in which respect the later act supersedes, repeals or modifies the inconsistent terms of the earlier enactment.

The opinion of the court was delivered by

DAWSON, J.: A petition for a rehearing in this case is presented on the assumption that *Bartlett, Treas., v. A. T. & S. F. Rld. Co.,* 32 Kan. 134, 4 Pac. 178, decided that section 2311 of the General Statutes of 1909 was repealed by a later act fixing a maximum levy for current county expenses.

Section 2311 of the General Statutes of 1909 was enacted in 1862, and the later act in question was section 181 of chapter 25 of the General Statutes of 1868, effective October 31, 1868.

Chapter 25 of the General Statutes of 1868 was substantially an adoption of the work of the Codifying Commission, covering the powers and duties of county officers and containing provisions relating to the levy and collection of taxes. Chapter 119 of the General Statutes of 1868, enacted at the same time and as part of the general scheme of codification (Gen. Stat, 1909, ch. 128), provided that among the earlier acts of the legislature which should remain in force was this act of 1862.

The act of 1862 reads in part as follows:

"SECTION 1. It shall be the duty of the board of county commissioners of each county in this state to levy in each year, in addition to the taxes for other purposes, a county tax sufficient to defray all county charges and expenses incurred during such year, and twenty per centum in addition to make up for delinquent taxes of the same year; and it shall be unlawful for any board of county commissioners or county clerk to issue county warrants or orders in any one year to a greater amount than the amount of the county tax levied in the same year to defray county charges and expenses, less the amount levied for delinquencies." (Act of March 5, 1862, Gen. Stat. 1868, p. 295, § 1, Gen. Stat. 1909, § 2311.)

The act under consideration in *Bartlett, Treas., v. A. T. & S. F. Rld. Co.,* supra, which is said to repeal the act of 1862, reads:

"In counties where the taxable property is less than five millions of dollars, the board of county commissioners shall not levy a tax for the

current expenses of any one year of over one per cent on the dollar of such valuation; and in counties where the taxable property is five millions of dollars or upwards, the tax for such purpose shall not exceed one-half of one per cent upon such valuation in any one year, unless by direct vote of the electors of the county." (Gen. Stat. 1868, ch. 25, § 181.)

Section 181 of chapter 25 of the General Statutes of 1868 has long given way to later statutes fixing the maximum limit of levies. (Gen. Stat. 1909, §§ 9394-9424.) But the point made in the petition for a rehearing can be examined by a careful scrutiny of the decision in *Bartlett, Treas., v. A. T. & S. F. Rld. Co.*, 32 Kan. 134, 4 Pac. 178. In that case, the county of Edwards levied a tax sufficient to pay current expenses pursuant to the act of 1862. The railroad company sought and obtained an injunction against the collection of this tax because the levy thus made was in excess of the maximum defined by section 181 of chapter 25 of the General Statutes of 1868. This court sustained the judgment, holding very properly "that the provisions of the statute last enacted *repeal those of the former, with which they conflict*" (p. 138), citing *Elliott v. Locknane and others*, 1 Kan. 126, in which the court stated this elementary hornbook doctrine:

"It is a rule without exception, that, where two statutes are in any respect, in both language and meaning, irreconcilably repugnant, the provisions of the statute last enacted repeal those of the former with which they conflict. It is true that provisions in letter conflicting are to be construed, if possible, so that both may stand; but where, by no construction both can stand, the intention manifest in the later law is uniformly given effect by the courts." (p. 135.)

But there is no room for contending that the entire act or the section of the act of 1862, quoted above, was repealed by section 181 of the act of 1868. The court did not say so. It had no occasion to say so. The power to fix any levy necessary to meet current expenses was abridged by the later act, and whatever the financial needs for current county expenses might be, the levy could not under section 181 exceed the limits therein fixed.

It would do violence to every rule of interpretation to hold that the act of 1868 limiting the levies repealed the provision in the act of 1862 prescribing the duty of the board of county commissioners to make a levy of any sort, or that it abrogated the duty to make estimates of the county's financial needs and

to make a provision to care for delinquent taxes; and it would be a strange thing if the enactment of a restriction as to the amount of the levy should be held to repeal the earlier and independent restriction:

". . . and it shall be unlawful for any board of county commissioners or county clerk to issue county warrants or orders in any one year to a greater amount than the amount of the county tax levied in the same year to defray county charges and expenses, less the amount levied for delinquencies." (Gen. Stat. 1909, § 2311.)

Both restrictions stand without possible conflict. Both are wise and salutary and serve a righteous purpose to protect the taxpayers of this commonwealth from onerous burdens; and the argument that in a neighboring county, not Leavenworth, the current expenses are running behind the county revenues about thirty thousand dollars a year is a very potent argument in favor of the correctness of the decision already reached in the instant case, and that the statutes governing the issue of county warrants should be respected and enforced.

An expression of the court's views is asked concerning the possible effect of section 2146 of the General Statutes of 1909 on the question at issue. Our answer is that it has none whatever. That section merely prescribes the county treasurer's duties touching the order of payment of county warrants *lawfully* issued.

The petition for a rehearing is denied.