No. 23,627.

THE STATE OF KANSAS, ex rel: RICHARD J. HOPKINS, as Attorney-general, *Plaintiff*, v. W. M. POSEY et al., *Defendants*.

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Consolidation of School Districts—Title of Act Sufficient*. Chapter 275 of the Session Laws of 1911, entitled:

> "An act to provide for the voluntary disorganization and consolidation of school districts to provide for the transportation of pupils and to amend sections 7431, 7432, 7436 and 7439 of the General Statutes of 1909,"

does not violate the provision of section 16 of article 2 of the constitution which requires that the title to an act shall clearly express its subject matter, although the text of the act is not as broad as its title. The act does provide for the voluntary disorganization and consolidation of school districts and for the transportation of pupils; and the concluding language of the title, "to amend sections 7431, 7432, 7436 and 7437 of the General Statutes of 1909" may be disregarded as literal inadvertence or surplusage.

2. SAME. An act of the legislature which is sufficient in itself as an independent piece of constructive legislation is not necessarily nor commonly invalid as a whole because it disregards and supersedes in whole or in part an earlier act on the same general subject without formally undertaking to amend the earlier act, nor because a superfluous part of its title announces a purpose to amend the earlier act

The State, *ex rel.,* v. Posey.

while the text itself does not so amend it, nor because one section of the later act not vital to its main purpose prescribes the repeal of certain sections of the earlier legislation although no such purpose is indicated in the title.

3. SCHOOL ELECTION—*Alleged Electioneering Misconduct—Did Not Vitiate Election.* The electioneering misconduct of a county superintendent in her efforts to induce electors of school districts to vote in favor of establishing a consolidated school under the provisions of chapter 275 of the Session Laws of 1911, as alleged in plaintiff's petition, examined, and *held,* that assuming such allegations of misconduct to be true, the elections on the proposition to consolidate the school districts were not vitiated thereby.

Original proceeding in quo warranto.  Opinion filed July 9, 1921.  Judgment for the defendants.

*Richard J. Hopkins,* attorney-general, *F. Dumont Smith,* of Hutchinson, and *Blaine Roberts,* of Larned, for the plaintiff.

*G. P. Cline, George W. Finney, Roscoe E. Peterson,* and *Nellie Cline,* all of Larned, for the defendants.

The opinion of the court was delivered by

DAWSON J.: The state challenges the assumption of official powers. by the defendants who are the members of the school board of a newly created consolidated school district in Pawnee county.  The state contends that the act under which this district was organized is void, and that the elections held, in some of the common-school districts for the purpose of voting to organize this consolidated district were vitiated by electioneering misconduct on the part of the county superintendent.  Judgment ousting the defendants from the exercise of official powers is prayed for.

The defendants plead that the district was organized early this year, that the district school elections on the proposition to consolidate were duly held, that the consolidation was duly sanctioned by the requisite majorities, and that the defendants were regularly elected as the members of the school board for the new district.  They deny that the county superintendent was guilty of any electioneering misconduct, but to avoid the necessity of taking evidence on that matter they raise the point that such misconduct on her part would not vitiate the election.

The principal point raised by the state depends upon the validity of chapter 275 of the Session Laws of 1911, under which the consolidated district was erected. Prior to its enactment, the law creating union or consolidated districts was governed by the provisions of chapter 305 of the Session Laws of 1901, which appears as sections 7431-7438 of the General Statutes of 1909. The title to the act of 1901 reads:

"An act to provide for the voluntary disorganization and consolidation of adjacent school districts and the transportation of pupils to and from school and to provide for the ownership of certain property."

The act provides a method by which the voters of two or more common-school districts may consolidate their school territories into one district for the purpose of conducting a graded school—that is, a school of more elaborate curriculum, better equipment, more and better trained teachers, better grading and classification of pupils, etc. Such a consolidation of districts may be effected by a majority vote at elections called by the clerks of the common-school districts affected. Provision is made for the payment of the indebtedness of the districts, and for the disposition of their property, and for the election of a school board for the new district. The act covers other pertinent details.

In 1903, another act was passed (chapter 429) providing for the attachment of any common-school district to a consolidated district. The act also contains certain pertinent details all embodied in one section. It appears as section 7439 of the General Statutes of 1909.

Except as these acts are or may be affected directly or by implication by the act of 1911, they are still in effect.

Plaintiff contends that the title to the act of 1911 (chapter 275) violates section 16 of article 2 of the constitution which provides:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be revived or amended unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed."

The title of the act of 1911 reads:

"An act to provide for the voluntary disorganization and consolidation of school districts to provide for the transportation of pupils and to amend sections 7431, 7432, 7436 and 7439 of the General Statutes of 1909."

It will be noted that this title avows its purpose to provide for the voluntary consolidation of school districts, etc., and to *amend* certain sections of statutes, three of these being part of the act of 1901 and one being the act of 1903. In the body of the act itself, the legislation starts off abruptly as if there was no antecedent legislation on the subject of common-school consolidation. It sets about its purpose as in the case of an independent matter of constructive legislation. An examination of the subject matter does show that section 1 largely supersedes and abrogates section 1 of the act of 1901. So, too, section 2 of the act of 1911 largely supersedes the act of 1903. In neither of these sections of the later act, however, is the usual method of amending earlier legislation followed. To expressly amend the earlier act, the proper method would be to begin thus: "Section 1 of chapter 305 of the Session Laws of 1901 is amended to read as follows," or "Section 7431 of the General Statutes of 1909 is amended to read as follows"; and such introductory language would be followed by a complete rewriting of the old section, not as it had read theretofore but as the legislature desired that it should thereafter read. The title to the act avows a purpose to amend certain sections of the acts of 1901 and 1903. But it is only insofar as the crude and careless draftsmanship of the act of 1911 may amend these sections by implication that there are any amendments to the earlier legislation discoverable in the later act. The only direct reference in the act of 1911 to these earlier sections is in section 5, and there it only names them to declare their repeal. Such repealing sections appearing at the conclusion of an independent act of legislation, and such familiar language as "all acts and parts of acts in conflict herewith are hereby repealed" do not have much significance. (*Wichita v. Telephone Co.*, 70 Kan. 441, 78 Pac. 886.) It is always the case that all sections of prior statutes and all acts and parts of acts in conflict with the latest expression of the legislative will are repealed whether that latest expression of legislative will takes pains to say so or not. Sometimes the later legislation does not altogether repeal the earlier, but it always does so far as any conflict exists; and it often becomes an interesting judicial question whether earlier legislation which is partially superseded by a later independent enactment in which

the provisions of the earlier act are completely ignored is so far emasculated that it serves no further apparent legislative purpose or whether there is still a field in which it can and should operate notwithstanding the later legislation. (*Elliott v. Lochnane and others*, 1 Kan. 126; *Bank v. Reilly*, 97 Kan. 817, 828, 156 Pac. 747.)

In *Hicks v. Davis*, 97 Kan. 312, 154 Pac. 1030, the court had to consider an act wherein the legislature of 1915 expressly undertook to repeal one item of $384.60 in a section of an act of 1913 carrying one hundred and ten such items. That was the express and only purpose of the act of 1915. Such a mode of legislation was the same as if the legislature had said, "Section 1 of the act of 1913 is hereby amended by striking out four lines near the middle of said section.". The court said that the only way to effectively remove that item from section 1 of the act of 1913 was for the legislature of 1915 to rewrite and reënact section 1, omitting the objectionable item therefrom. But in the same opinion (page 318) it was recognized that when the legislature is dealing independently with any subject, "it may close its eyes, and frequently does, to all earlier legislation," and that such later legislation is valid, and that the earlier legislation so far as inconsistent therewith will be superseded and repealed thereby.

The title of the act of 1911 is altogether sufficient to clearly express its main purpose which is to provide for the voluntary disorganization and consolidation of school districts, and to provide for the transportation of pupils. The concluding words of the title "and to amend sections 7431, 7432, 7436 and 7439 of the General Statutes of 1909," are either superfluous or clearly erroneous. These words are superfluous if they relate to the independent constructive legislation contained in the act of 1911, because if the sections of the older acts named in the title are inconsistent with the later act, the later act did repeal them; and if not inconsistent they are certainly not amended, although the title declares such purpose, because the text of the act does not purport to amend them. In this latter view of the matter, the defect in the act of 1911 is only subject to the objection that the title of the act is broader than its subject matter, and this is seldom a fatal objection. It is not fatal here. A very possible explanation of the defect is that the title

contains a mere verbal inaccuracy, a literal inadvertence; that what the blundering draftsman intended was that the concluding words of the .title should read not *to amend* but *to repeal* the sections named in the title. (*Brook v. Blue Mound,* 61 Kan. 184, 59 Pac. 273; *Reese v. Hammond,* 94 Kan. 459, 461, 146 Pac. 997.)    This view is strengthened by section 5 of the act, which specifically repeals the sections which the title declares its purpose to amend.   If it were necessary to adopt that view, it might follow that since the title avows a purpose to amend those sections, and in the text of the act they are not amended but repealed, section 5 of the act of 1911 declaring their repeal is invalid, but if so, that would not destroy the other provisions of the act of 1911.

We have no greater regard for such poor legislative workmanship than counsel ·for the state, but we cannot go to the extent of declaring that the act of 1911 is void.   It certainly does not offend against the constitutional provision that the title shall clearly express the purpose of the act (Art. 2, § 16) except as to section 5, and that matter is not material to the validity of the organization of this consolidated school district, nor to the validity of the official power of these defendants.

Touching the alleged misconduct of the county superintendent, but which is positively denied by the defendants, it will not be necessary to take evidence to determine the truth of these matters alleged by plaintiff.   We will assume that those allegations are true, and that the superintendent promised some of the electors that if they would vote for the proposed consolidation she would take steps to alter the boundaries of the new district so as to exclude their properties therefrom, and that she promised that the old schoolhouses should not be disposed of for a year.   The law governs the disposition of the schoolhouse properties, and the county superintendent has nothing to do with the disposition of such property.   So far as her promises to alter the boundaries of the new district were concerned, it does not appear that the later exclusion of the properties of some of the voters of the old district would not be proper.   Perhaps by reason of distance or other hardship, inconvenience or injustice that might fall upon certain individuals who were inclined to oppose the consolidation, they

.and their properties ought to be excluded from the new district and attached elsewhere. It is not alleged that these promises of the superintendent were made in secret; what the superintendent did was "not done in a corner"; the superintendent was doubtless prompted by an ambition to accomplish something which she considered worth while for the schools of Pawnee county during her administration; and so she promised to do what she lawfully could for the relief of those voters whose peculiar situation prompted them to take a tentative stand against what the superintendent believed to be the best educational interests of the locality. This is very far outside of any of the forms of corruption which would vitiate an election. (*Board of Education v. Shepherd,* 90 Kan. 628, 634, 135 Pac. 605.) Obviously the county superintendent had no personal, corrupt or reprehensible interest in what she did or in what she promised. Whether her electioneering endeavors were worthy of the object she sought—whether a modern consolidated school is worth the effort of labor and persistence and sacrifice of its advocates and promoters to attain, against the lethargic indifference or obstructive attitude of those who are temperamentally or selfishly opposed to progress or opposed to change, it cannot be said that the conduct of the county superintendent nor the methods she used to induce electors to support the proposed consolidation vitiated the elections. See discussions in slightly analogous cases in *The State v. Elting,* 29 Kan. 397; *Plaster Co. v. Blue Rapids Township,* 77 Kan. 580, 96 Pac. 68.; and note in 14 L. R. A. 62.

A judgment of ouster will be denied, and judgment will be entered for defendants.