No. 32,700

D. L. Voshell, *Appellee*, v. Anton Peterson, as County Clerk of McPherson County, *Appellant*.

filed November 1, 1935.                                                           Opinion

*George R. Lehmberg*, county attorney, for the appellant.

*W. E. Holmes, Mark H. Adams, Howard L. Baker* and *Charles E. Jones*, all of Wichita, for the appellee.

The opinion of the court was delivered by

Dawson, J.: Plaintiff, a taxpayer of school district No. 30, in McPherson county, brought this action under authority of R. S. 60-1121 to enjoin an alleged illegal tax levy which the defendant county clerk was about to spread on the tax rolls of the school district.

The pertinent facts were these: At the annual meeting held on May 31, 1935, the school-district electors adopted a budget for the ensuing year beginning July 1, 1935, and ending June 30, 1936. An itemized budget for teachers' salaries, fuel, supplies, etc., totaling $7,218.50, was prepared, and a statement of cash on hand, $491.21, and a balance of $2,508.41 in hands of county treasurer was appended. This budget was transmitted to the county clerk on a form prescribed by the state tax commission, accompanied by a certificate that a levy to raise $7,000 would be required.

Pursuant to a method prescribed by the state tax commission and on a printed form prepared by it, the county clerk set down some of the budgetary figures of the school district, together with some

figures from his own records and perhaps those of the county treasurer, and made an independent calculation as to the amount of money the school district would require, and concluded that the district's budgetary needs would be sufficiently met by a levy which would raise $5,757.02 instead of the $7,000 as certified by the school district.

Plaintiff's cause of action was predicated on the assumption that the county clerk's calculation was based on an unauthorized and erroneous theory; that according to the budgetary requirements of the district and the amount of cash on hand and in the county treasury to the district's credit a levy to raise $1,896.61 would be sufficient; and that the proposed levy to raise $5,757.02 was illegal and excessive and should be enjoined.

The school district was not impleaded in the action. The county clerk joined issues on plaintiff's petition by a general denial.

The cause was tried by the court without a jury. No dispute of fact was developed. Exhibits of the district's budget and of the county clerk's method of calculating the required sum to be raised by taxation were in evidence. The latter, somewhat abridged, reads:

"COUNTY CLERK'S FORM

[Prepared by the state tax commission]

·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"Turkey Creek (common) school district No. 30, McPherson county, Kansas.

"GENERAL FUND

"*Requirements:*

·  · ·  ·  ·  ·  ·  ·  ·  ·  ·

"2. Amount of budget adopted for period 7-1-35 to 6-30-36 as certified by district ................................. $7,218.50
"3. Amount needed to maintain school 7-1-36 to 12-31-36 (not to exceed 50% of line 2) .............................. 3,609.25

·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"6. Total requirements, 5-1-35 to 12-31-36 ................... $10,827.75

"*Revenues:*

"7. School-district treasurer's balance, 4-30-35 ............... $491.81
"8. County treasurer's balance, 4-30-35 .................... 4,070.37
"9. Total amount of 1934 ad valorem tax levied (including intangible and dog tax) ................................. 7,281.14
"10. Less 5 percent for delinquent taxes ..................... 364.06

·  ·  ·  ·  ·  ·  ·  ·  ·

"12. Less: Taxes apportioned by county treasurer ............ $6,349.33
"13. Total deductions ....................................... 6,713.39
"14. 1934 tax in process of collection, 4-30-35 ................ 567.75
Receipts from other sources, 5-1-35 to 12-31-36.

·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"19. State and county aid (3 apportionments) ................. $200.00
"20. Intangible tax (1935) .................................... 35.23
"21. Dog tax (1935) .......:................................... 60.00

"23. Back tax collections (estimated) .......................... 120.00

"26. Total revenue available, 5-1-35 to 12-31-36............... $5,545.16
"27. Net 1935 tax requirements (line 6 above minus line 26).... 5,282.59
"28. Add 9 percent of line 27 for delinquent taxes.............. 475.43
"29. Total 1935 ad valorem tax requirements.................. 5,757.02"

Plaintiff's estimate of the district's requirements were predicated on the following:

"2. Amount of budget adopted for period 7-1-35 to 6-30-36 as certified by district .................................... $7,218.50
"26. Total revenue available 5-1-35 to 12-31-36 .............. 5,478.49
"27. Net 1935 ad valorem requirements ...................... 1,740.01
"28. Add 9 percent of line 27 for delinquent taxes ............ 156.60
"29. Total 1935 ad valorem tax requirements ................ 1,896.61"

The trial court adopted plaintiff's calculations *in toto,* gave judgment in his favor, enjoined the extension of any levy on the tax rolls intended to raise any greater sum than $1,896.61, and particularly enjoined any levy designed to raise any money to pay the expenses of the school district for the period July 1, 1936, to December 31, 1936.

Defendant appeals, suggesting first that no judgment prejudicial to the fiscal affairs of the school district should have been made without the latter being a party to the action. This point might be good if it had been raised below, but the record shows nothing of the sort. The same short answer must be made to the argument that the county clerk was not authorized to reduce the district's certified financial requirement of $7,000 to the sum of $5,757.02 as calculated by him.

Coming to the question at issue: Did the county clerk's method of calculating the district's levy requirement vitiate his conclusion that a tax levy to raise $5,757.02 should be spread? The method and form used by the county clerk were prescribed by the state tax commission. That tribunal took into account the fact that the school year does not coincide with the fiscal year, and that the expenses of the first few months of each school year are met—and by operative necessity must be met—from the balance of funds carried over from the taxes collected the preceding year.

There is nothing in the budget law which requires that the school-district treasury shall have no cash on hand at the close of the

fiscal year. Indeed, the statute contemplates the contrary. R. S. 1933 Supp. 79-2934, in part, directs—

"Any balances remaining in any fund at the end of the current budget year shall be carried forward to the credit of said fund for the ensuing year."

The balances are to be "carried forward," not necessarily to be used to reduce the budgetary estimates for the ensuing year to such a degree that it cannot function normally as the cash-basis law contemplates and as common sense would suggest. In *State, ex rel., v. Peal*, 136 Kan. 136, 13 P. 2d 302, it was said:

"A tax levy, within the limits of the statute, is not void because a larger amount is levied than actually required, unless the amount is so grossly excessive as to show a fraudulent purpose in making the levy." (Syl. ¶ 2.)

In R. S. 1933 Supp. 10-1120 the cash-basis law provides:

"The levying of a tax by any municipality (which includes a school district [R. S. Supp. 10-1101]) which raises more money than is used or needed for the tax year shall not be the basis of a protest by any taxpayer and all such protests shall be of no force or effect."

See, also, *Kaw Valley Drainage Dist. v. Zimmer*, 141 Kan. 620, 42 P. 2d 936.

The case comes down to this:

There is no provision of statute directing the method by which the county clerk shall make his calculations, but it is quite proper and desirable that a method which should be both uniform and practical for use by county clerks be prescribed by the state tax commission. Such was the method used by the county clerk. It may be conceded (although it need not be decided) that the specific method prescribed by the state tax commission and used by the county clerk to determine the requisite levy—the year's estimated expenses plus half the next year's estimated expenses, less the cash on hand and in sight—is not authorized by the statute. What follows? The school district did not arrive at its budgetary estimate by the method complained of and held illegal by the trial court. Its schedule of anticipated financial requirements, totaling $7,218.50, conformed precisely with every provision of law, and it was acting within its privilege and discretion when it certified that it could get along with a levy to raise $7,000.

Now, if the method of the county clerk be ignored entirely, it is quite apparent that he did his duty under the law—so far as this complaining taxpayer is concerned, at least—when he checked the

school district's figures and found that they did not violate the statute, which says:

"The county clerk shall not extend a levy in any common-school district . . . which will raise an amount in excess of that portion of said budget to be derived by said tax levy or which will exceed the maximum levies prescribed by law." (R. S. 1933 Supp. 79-2931.)

It is not contended, and cannot be, that the sum arrived at by the county clerk, $5,757.02, for which a levy was to be spread on the tax rolls of the district, was not within the limitations of the pertinent statute; and the process by which he arrived at that amount is no concern of the plaintiff taxpayer, seeing that he is only authorized by the statute (R. S. 60-1121) to maintain an action to enjoin an illegal levy. Clearly the proposed levy is not of that character.

Another reason why some of the justices of this court cannot approve the judgment of the trial court may be added here. The constitution contains a mandate to the legislature to establish, encourage and maintain a system of public schools. (Art. 2, § 23; art. 6, § 2.) This mandate has been loyally executed from the foundation of the state. The cash-basis law of 1933 is intended to put the financial affairs of the common schools upon a solid foundation—upon a pay-as-you-go basis. The judgment of the trial court completely defeats that legislative purpose. If the injunction complained of were permitted to stand, school district No. 30 could not possibly maintain a school and pay the expenses thereof in conformity with the cash-basis law during the autumn of 1936.

The judgment of the district court is reversed, and the cause remanded with instructions to dissolve the injunction and to enter judgment for defendant.